ANDERSON, Internal Revenue Collector, v. MORRIS & E. R. CO. et al.

(Circuit Court of Appeals, Second Circuit. July 9, 1914.)

No. 248.

1. CORPORATIONS (§ 642*)—FOREIGN CORPORATIONS—"DOING BUSINESS" WITHIN STATE.

A single transaction within the state by a foreign corporation does not constitute "doing business" in the state within a statute forbidding a foreign corporation from doing business within the state until it has complied with specified requirements, provided the single transaction was

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

done by the corporation without an intent to engage in other acts of business within the state.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2520–2527; Dec. Dig. § 642.*

For other definitions, see Words and Phrases, vol. 3, pp. 2155–2166; vol. 8, pp. 7640, 7641.

Foreign corporations doing business in state, see note to Wagner v. J. & G. Meakin, 33 C. C. A. 585; Ammons v. Brunswick-Balke-Collender Co., 72 C. C. A. 622.]

2. INTERNAL REVENUE (§ 9*)—CORPORATION TAX—"ENGAGED IN BUSINESS."

Where a railroad corporation leased its property and franchises for the whole term of its charter, the lessee having sole control of its property and the operation of its road, the fact that the lessor retained its primary franchise of corporate existence, maintained its organization, held an annual meeting of its stockholders, elected directors, and amended its by-laws, and that its directors held a special meeting, elected officers, and appointed an executive committee, was insufficient to show that it was "engaged in business" within Corporation Tax Act Aug. 5, 1909, c. 6, 36 Stat. 112 (U. S. Comp. St. Supp. 1911, p. 946), § 38, imposing an excise tax on corporations organized for profit and engaged in business in any state, etc.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. § 9.*

For other definitions, see Words and Phrases, vol. 3, p. 2394.]

3. TAXATION (§ 58*)—STATUTES—CONSTRUCTION.

A citizen is exempt from taxation unless the tax is imposed by clear and unequivocal language, statutes imposing taxes being strictly construed in favor of taxpayers and against the state.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 134, 135; Dec. Dig. § 58.*]

4. INTERNAL REVENUE (§ 9*)—CORPORATION TAX—NATURE OF TAX.

The tax imposed on corporations by Corporation Tax Act Aug. 5, 1909, § 38, is not a direct tax, but rather an excise on the privilege of doing business in a corporate capacity.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. § 9.*]

5. INTERNAL REVENUE (§ 9*)—DIRECT TAXES—CORPORATIONS.

The rule that a corporation is an artificial entity distinct from its stockholders is a fiction of the law, which is recognized by the courts for some purposes and disregarded for others; and hence, where a railroad corporation leased its property and franchises for the whole term of its charter, the fact that the lessee paid the rent, not to the lessor entity, but rather to its stockholders and bondholders, could not prevent the rent so paid being subject to taxation under Corporation Tax Act Aug. 5, 1909, § 38, if the act was otherwise applicable.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. § 9.*]

6. INTERNAL REVENUE (§ 9*)—CORPORATION TAX—RAILROADS—LEASE OF PROPERTY—ENGAGED IN BUSINESS.

A railroad corporation leased its property and franchises, for the full term of its charter and any renewal thereof, to another railroad company, the lease being approved by the state Legislature granting the original charter, and providing, not only that the lessor should thereafter maintain its corporate existence, but should issue to the lessee stock, bonds, or other obligations for the completion of a projected branch road and for the construction of any other railroads which the lessee might desire to construct and to cover expenses for the construction or purchase of locomotives, cars, and machinery, the lessee binding itself to pay and

discharge such obligations at maturity. *Held*, that the issuance of bonds by the lessor corporation under such provision did not amount to a resumption of business which the lease had transferred or an engaging in business within Corporation Tax Act Aug. 5, 1909, § 38, imposing an excise tax on corporations organized for profit and engaged in business in any state.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. § 9.*]

In Error to the District Court of the United States for the Southern District of New York.

This case comes here on writ of error to review a judgment of the United States District Court for the Southern District of New York, entered on November 11, 1913, in favor of the railroad company and against the collector for the sum of $22,441.12.

H. Snowden Marshall, U. S. Atty., of New York City (Addison S. Pratt, Asst. U. S. Atty., of New York City, of counsel), for plaintiff in error.

W. S. Jenney and Douglas Swift, of New York City, for defendants in error.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. The Corporation Tax Act of August 5, 1909 (36 Stat. 112), provides in section 38 as follows:

"That every corporation * * * organized for profit and having a capital stock represented by shares * * * and engaged in business in any state * * * shall be subject to pay annually a special excise tax with respect to the carrying on or doing business by such corporation * * * equivalent to one per centum upon the entire net income over and above five thousand dollars, received by it from all sources during such year," etc.

The commissioner of Internal Revenue at Washington assessed the Morris & Essex Railroad Company, incorporated by a special act of the Legislature of New Jersey in 1835, in the sum of $19,630.23, the tax being assessed for the year 1910 under the act of 1909 above quoted. This tax was paid under protest, and this action was thereafter brought to recover the amount paid, with interest on the same from June 30, 1911. The tax was assessed upon the net income of the Morris & Essex Railroad Company for the year 1910. The act authorizes the taxation of every corporation "engaged in business" in any state, and the tax authorized is defined in the act as "a special excise tax with respect to the *carrying on* or *doing business* by such corporation." But the Morris & Essex Railroad Company claims that it was not subject to the tax for the reason that it was not during the period covered by the tax "engaged in business" or "carrying on or doing business" within the meaning of the Corporation Tax Act.

On December 10, 1868, the Morris & Essex Railroad Company leased to the Delaware, Lackawanna & Western Railroad Company (a corporation created by the Legislature of the state of Pennsylvania) its railroad and branches and all its other property, franchises, etc., for and during the full term of its charter and any continuance thereof. The consideration of the lease was the assumption by the lessee of all

the bonds and other obligations of the lessor and its agreement to pay the principal and interest thereon, to pay all taxes which might be imposed on the lessor, its business, income, or property and also to pay annually 7 per cent. (or in a certain contingency 8 per cent.) of its capital stock. This lease has never been terminated by the parties, and during the entire period covered by the tax the Delaware, Lackawanna & Western Railroad Company was in possession of the property of the Morris & Essex Railroad Company and was operating its road under and in accordance with the lease.

The Delaware, Lackawanna & Western Railroad Company, hereinafter referred to as the lessee, has, according to the terms of the lease, paid the rental, consisting of the interest on the stock and bonds, directly to the stockholders and bondholders, and in the year 1910 it paid to the holders of such stock the sum of $1,050,000 and to the holders of such bonds the sum of $1,724,390. The sum of these two amounts was taken by the Commissioner of Internal Revenue as the income for the year 1910 of the Morris & Essex Railroad Company, hereinafter referred to as the lessor, and after deducting therefrom the sum of $806,367.49 (the amount of interest paid during the year on an amount of its bonded indebtedness not exceeding the amount of its paid-up capital stock) and the further sum of $5,000 specifically allowed as a deduction by the statute, he assessed a tax against said Railroad Company at the rate of one per centum of the remainder.

The lessor company has not, since the lease, managed, controlled, operated, or maintained the railroad, or any part thereof, or any other railroad, nor has it demanded or received or collected any income, revenue, earnings, rents, or profits from the railroad or from any other railroad. The lease provided, however, that the lessor company should, notwithstanding the lease, continue to maintain its organization as a corporation in the manner prescribed in and by its charter and the several supplements thereto, and do and perform all acts and things necessary and proper thereto, and should also do and perform, at the expense of the lessee company, all such lawful acts and things as the latter might request in order to preserve the former's corporate and other rights, and in order to enable the latter to enjoy, use, and exercise the demised property, franchises, and rights as fully as the former might, had the lease not been made, the latter having the right to use the former's name in connection with the lease or the demised property whenever it might be advised that it was proper so to do.

It also provided that the lessor company should, upon the request of the lessee company, make, execute, issue, and deliver to it its bonds, other obligations or stock, to such an amount as might be required by the lessee company for the completion of a certain railroad then being constructed, which the lessee company agreed to complete, for the construction of any other railroads which the lessee company, in the exercise of the rights conferred by the charter of the lessor company, might desire to construct, for the construction or purchase of locomotives, cars, machinery, etc., for all other things or works, which the lessee company might desire to do in the exercise of its rights, the cost of which is properly chargeable to construction account, and for the payment and discharge at maturity of the principal or its bonds and

other obligations theretofore issued, and that the lessor company should not make, execute, or issue any bonds, obligations, or stock unless requested so to do by the lessee company.

The lessor company has maintained its corporate organization since the execution of the lease, and in the year 1910, the year of the tax, its stockholders, board of directors, and its executive committee held meetings, and at the meetings officers were elected. At a meeting of the executive committee a resolution was adopted authorizing the president to execute and deliver a certain indenture of release and conveyance of land, but it does not appear that at any time during the year such indenture was ever executed and delivered. But on December 31, 1910, the lessor company executed and delivered to the lessee company $1,400,000 of bonds to reimburse it for amounts previously expended by it in construction work on the railroad property. These bonds were of an issue known as "first refunding gold mortgage bonds" and were authorized to the amount of $35,000,000 in the year 1900, and executed and delivered from time to time for the purpose of refunding the outstanding bonds of the lessor company, or of reimbursing the lessee company for amounts expended by it for construction work on the railroad property.

In the year 1910 the lessee company bought land and took title in the name of the lessor company, and sold land standing in the name of the lessor company, using its name as grantor.

The lessee company duly filed its return for the year 1910, under the Corporation Tax Law, and included under the head of gross income all of the income, revenue, and earnings received by it from the management, use, and operation of the lessor company, and under the head of deductions for the ordinary and necessary expenses of operation and maintenance, the amount of $2,774,390 paid by it to the stockholders and bondholders of the lessor company under the lease; and the lessee company has paid the tax assessed against it, computed upon its gross and net income, as shown by said return.

[1] The question therefore arises whether upon this state of facts the tax was properly assessed upon the lessor company. Was that company in 1910 carrying on or doing business within the meaning of the Corporation Tax Act? The question of when a corporation is engaged in business or is "doing business" within the meaning of a statute may depend to some extent upon the character of the statute. The courts in many decisions have held that a single transaction within a state by a foreign corporation is not a "doing of business" in the state within the meaning of a statute which forbids a foreign corporation from doing business within a state until it has complied with certain requirements, provided the single transaction was done by the corporation without an intent to engage in other acts of business within the state. Cooper Manufacturing Co. v. Ferguson, 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137 (1885); Oakland, etc., Co. v. Fred. W. Wolf Co., 118 Fed. 239, 55 C. C. A. 93 (1902); Alpena, etc., Co. v. Jenkins, etc., Co., 244 Ill. 354, 91 N. E. 480 (1910); Ammons v. Brunswick, etc., Co., 141 Fed. 570, 72 C. C. A. 614 (1905); Alleghany Co. v. Allen, 69 N. J. Law, 270, 55 Atl. 724 (1903); Sigel-Campion, etc., v. Haston, 68 Kan. 749, 75 Pac. 1028 (1904); Lutes Co. v. Wy-

song, 100 Minn. 112, 110 N. W. 367 (1907); Louisville, etc., Co. v. Mayor, etc., 114 Tenn. 213, 84 S. W. 810 (1905).

But a much broader meaning is said to be given to the words "doing business" when used in a tax statute than is given to them when used in a statute which forbids a foreign corporation to do business in a state until it has complied with the conditions which the statute imposes. See Cook on Corporations, vol. 3, pp. 2352, 2353. And a different meaning may possibly be given to the words when they are used in a statute which forbids a corporation from "doing business" before a condition precedent is complied with in the state which creates it. With that, however, we are not now concerned, and express no opinion concerning it.

In the year for which the tax was assessed, 1910, the stockholders, directors, and executive committee of the lessor company held no meetings and took no formal action, except as follows:

1. Its stockholders as already stated held an annual meeting at which its by-laws were amended with reference to the amount of stock necessary to constitute a quorum at a stockholders' meeting, directors were elected, and all the proceedings of the board of directors and the actions of its several committees and the acts of its officers and agents in pursuance thereof were approved, ratified, and confirmed.

2. Its board of directors held a special meeting at which officers were elected and an executive committee of three persons was appointed.

3. On January 18, 1910, the executive committee of the board of directors of the lessor company met, and authorized, empowered, and directed the president to execute and deliver to the Hoboken Ferry Company a deed, releasing and conveying to it all of the land and other property which had been, on December 29, 1904, leased by the ferry company to the lessor company.

4. On December 31, 1910, the lessor company executed, issued, and delivered to the lessee company its bonds to the amount of $1,400,000 to reimburse it for amounts expended by it in construction work on the railroad property of the lessor company.

[2] The fact that the lessor company retaining its primary franchise of corporate existence, maintained its organization, held an annual meeting of its stockholders, elected directors and amended the by-laws, and that its board of directors held a special meeting and elected officers and appointed an executive committee, cannot be regarded as doing business within the purview of the act, for it was simply keeping up the corporate organization, and surely no one can claim that the act of 1909 imposes any excise tax upon the primary franchise or maintenance of the corporate organization. There was nothing in all this that involved the exercise of any of the secondary franchises of the corporation.

The fact that a resolution was adopted by the executive committee which directed the president of the lessee company to release and convey certain lands to the Hoboken Ferry Company, which lands had previously been leased by the latter company to the lessor company, may be disregarded. The record does not show whether or not the president carried the resolution into effect. It is not necessary, therefore, to consider whether if he had carried it into effect his action in

doing so would have amounted to a doing of business within the meaning of the act. The mere adoption of the resolution without more is, in our opinion, inadequate to such an end.

[3] This brings us to inquire whether the lessor company is to be regarded as "engaged in business" because of its issuance of the bonds. In seeking an answer to that inquiry it is necessary to bear in mind that a statute which levies a tax must be strictly construed. The rule is well settled that the citizen is exempt from taxation unless the same is imposed by clear and unequivocal language. If the language used is ambiguous and the construction doubtful, the doubt must be resolved in favor of those upon whom the tax is sought to be laid.

"It is the general rule that statutes providing for taxation are to be construed strictly as against the state and in favor of the taxpayers, and the burdens and liabilities which they impose are to be kept within the strict letter of the law and not extended beyond its clear terms by any inference, implication, or analogy; but this principle must not be pushed so far as to defeat the legislative purpose by mere construction, but an interpretation of the statute must be given in accordance with its real intention and meaning if that is clearly discoverable." 37 Cyc. 768.

Under the statute herein involved we are not inclined to decide the case upon the theory that as the issuance of the bonds was a single transaction, the lessor company cannot, because of that fact, be regarded as having been "engaged in business." A single transaction might be of such a nature as possibly would bring the corporation engaged in it within the purview of the taxing act.

[4] It is important to keep in mind that the Corporation Tax as imposed by the act is not a direct tax, but an excise on the privilege of doing business in a corporate capacity; and in construing it the purpose and design of Congress in its enactment is not to be disregarded. The Supreme Court of the United States in Flint v. Stone Tracy Co. (1910) 220 U. S. 108, 145, 31 Sup. Ct. 342, 347 (55 L. Ed. 389, Ann. Cas. 1912B, 1312), in passing on the statute said:

"It is therefore apparent, giving all the words of the statute effect, that the tax is imposed, not upon the franchises of the corporation irrespective of their use in business, nor upon the property of the corporation, but upon the doing of corporate or insurance business and with respect to the carrying on thereof, in a sum equivalent to one per centum upon the entire net income over and above $5,000 received from all sources during the year; that is, when imposed in this manner it is a tax upon the doing of business with the advantages which inhere in the peculiarities of corporate or joint-stock organizations of the character described. As the latter organizations share many benefits of corporate organization, it may be described generally as a tax upon the doing of business in a corporate capacity."

The lessor company being a corporation organized under the laws of New Jersey and organized for profit and having a capital stock represented by shares, it, to that extent at least, is within the language of the act of 1909. In Eliot v. Freeman, 220 U. S. 178, 31 Sup. Ct. 360, 55 L. Ed. 424 (1911), the Supreme Court held that a joint-stock company created in Massachusetts was not within the purview of the act because not organized "under the laws" of the state, that state having no statute providing for the organization of such companies. Joint-

stock companies of the statutory character are not known to the laws of Massachusetts.

[5] But to make the act applicable, the lessor company must not alone exist "under the laws" of the state which created it. It must, in addition, have a net income over and above $5,000, etc. It is said the lessor company does not meet that requirement of the law, as no money was paid to it, the rentals having been paid not to it but to its stockholders and bondholders. The notion that a corporation is an artificial entity distinct from the members who compose it is a fiction of the law which the courts recognize for some purposes and disregard . for others. Without going into the matter at length, it suffices to say that the fact that the lessee paid the rent, not to the corporate entity, but to the stockholders and bondholders, cannot prevent the act from applying to the money so paid if the other conditions of the act make its terms applicable. The fiction referred to cannot be permitted to accomplish a fraud upon the statute and an evasion of its obligations.

[6] But the act makes it necessary that the corporation having a net income over and above $5,000 shall be "engaged in business," and the special excise tax which the act imposes is imposed with respect "to the carrying on or doing business by such corporation."

In Zonne v. Minneapolis Syndicate, 220 U. S. 187, 31 Sup. Ct. 361, 55 L. Ed. 428 (1911), the Supreme Court held that the act was inapplicable to a corporation the sole purpose of which was to hold the title to a tract of land subject to a lease thereof for a term of 130 years, and for the convenience of its stockholders, to receive and distribute among them, from time to time, the rentals that accrued under the lease and the proceeds of any disposition of said land.

And in McCoach, Collector, v. Minehill & Schuylkill Haven Railroad Co., 228 U. S. 295, 33 Sup. Ct. 419, 57 L. Ed. 842 (1913), the Supreme Court held the act was not applicable to a railroad company which had leased its line to another company by which it was operated. The court said that if the lease had been made without authorization of law it might be that the lessee could be deemed in law the agent of the lessor, or that the lessor might be estopped to deny the agency so that the act would be applicable. But the effect of the legislative authorization, the court said, was to constitute the lessee company the public agent for the operation of the railroad and to prevent the lessor company from carrying on business in respect of the maintenance and operation of the railroad so long as the lease continued. The conclusion accordingly was that the lessor company was not taxable under the act. But in the case last cited the court used this language:

"It should be mentioned that there is nothing in the record to show that during the taxing years in question the company exercised its power of eminent domain, or put in force any other special corporate power, in aid of the business of the lessee. We, therefore, do not pass upon the question whether, if it should do so, it would be taxable under the act in question."

The language above quoted has led counsel to urge upon us that the issuance of the bonds involved an exercise of the special corporate power of the lessor in aid of the business of the lessee, and that this exercise of power makes the lessor liable to the tax.

The franchise of constructing, maintaining, and operating its rail-

road was not alienable, whether by sale, lease, or mortgage, without the express consent of the Legislature of the state from which the corporation derived its charter or corporate existence. Central Transportation Co. v. Pullman Palace Car Co., 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55 (1891). The lease made by the lessor company in the case at bar had been validated and confirmed by the New Jersey Legislature by an act approved February 9, 1869 (P. L. 1869, p. 28). The lease thus confirmed by legislative act transferred to the lessee "the franchises, immunities, rights, powers and privileges" which had been granted to the lessor, and during the full term of the continuance of the charter and all renewals thereof. And under this lease for more than 40 years prior to the enactment of the Corporation Tax Act the business for which the lessor company had been chartered had been carried on by the lessee company, which had exclusively possessed, managed, and operated the railroad property. The lease for all practical purposes was a conveyance in fee. See Black v. Raritan Canal Co., 24 N. J. Eq. 455. The lessee company acquired even the right of eminent domain which the lessor company had possessed (see Day v. N. Y. S. & W. R. R. Co., 58 N. J. Law, 677, 34 Atl. 1081), as well as its immunity from taxation by the state of New Jersey. See State Board of Assessors v. M. & E. R. R. Co. and D., L. & W. R. R. Co., 49 N. J. Law, 193, 7 Atl. 826. The lessor company, however, had retained the power to issue bonds and to execute deeds of the leased property, but such powers it could exercise only with the consent and at the request of the lessee company, which latter company guaranteed the payment of both the principal and interest and alone derived any advantage from their issuance, as the income of the lessor's stockholders was definitely fixed by the lease for all time. The act done was a purely formal act done by the lessor to enable the lessee to raise money on the security of the property for its development and operation in the conduct of the railroad business. In doing it the lessor was not "carrying on or doing business" within the meaning of the Corporation Tax Act. The meaning of the words "carrying on or doing business" and "engaged in business" must be given their ordinary and natural signification, and, given that signification, the act done is not within the meaning of the statute. The lessor company was not an actively operating concern. Under the terms of this lease the lessor corporation had practically gone out of business and was disqualified from any activity respecting the operation and management of the railroad business which it had been incorporated to carry on.

The issuance of the bonds was an act done simply to enable the lessee to enjoy, use, and exercise the property, franchises, and rights which the lessor had previously demised, and did not amount to a resumption of business which the lease had transferred, or a "doing of business" in the statutory sense.

As the lessor company was not "engaged in business" in 1909, judgment is affirmed.