WATERBURY GASLIGHT CO. v. WALSH, Collector of Internal Revenue.

(District Court, D. Connecticut.   October 30, 1915.)

No. 1809.

1. GAS ☞6—POWERS—LEASE OF PROPERTY.

   A lease by a gas company of its physical property for a term of years, the business to be carried on by the lessee, is not ultra vires, in the absence of anything in its charter or the laws of the state prohibiting it, although not expressly authorized by such charter or laws.

   [Ed. Note.—For other cases, see Gas, Cent. Dig. § 1;  Dec. Dig. ☞6.]

2. INTERNAL REVENUE ☞9—EXCISE TAX ON CORPORATIONS—"CARRYING ON OR DOING BUSINESS."

   A gas company, which has leased its plant and all other physical property for a term of years, the business for which it was incorporated being carried on by its lessee, is not "carrying on or doing business," within the meaning of Corporation Tax Act Aug. 5, 1909, c. 6, § 38, 36 Stat. 112 (Comp. St. 1913, § 6300), and subject to the tax thereby imposed, although it retains its franchise and organization, and receives and disburses its income, and under the terms of the lease bears the expense of alterations, improvements, and additions to its plant made during the term, and also during the term has applied for and obtained from the Legislature amendments to its special charter.

   [Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28;  Dec. Dig. ☞9.

   For other definitions, see Words and Phrases, First and Second Series, Carrying on Business.]

At Law.   Action by the Waterbury Gaslight Company against James J. Walsh, as Collector of Internal Revenue for the District of Connecticut.   On demurrer to answer.   Demurrer sustained.

Henry J. Hart, of New Haven, Conn., for plaintiff.

Thomas J. Spellacy, U. S. Dist. Atty., and Frederick A. Scott, formerly U. S. Dist. Atty., both of Hartford, Conn., for defendant.

THOMAS, District Judge.   This case arises upon plaintiff's demurrer to defendant's answer.   The action is brought to recover excise taxes assessed by the Department of Internal Revenue against the Waterbury Gaslight Company for the years ending December 31, 1910, 1911, and 1912, respectively, under the provisions of section 38 of the act of Congress passed August 5, 1909, entitled:

"An act to provide revenue, equalize duties and encourage the industries of the United States and for other purposes."

The plaintiff is a Connecticut corporation, chartered for the purpose of manufacturing, selling, and distributing gas, with all the necessary powers and authority incidental and appertaining thereto, by a special act of the General Assembly of Connecticut enacted in 1854 (Special Laws of Conn. vol. 3, p. 591), and subsequently amended in 1895 and 1897 (Special Laws of Conn. vol. 12, pp. 17, 386, 673), in 1903 (Special Laws of Conn. vol. 14, p. 53), and in 1911 (Special Laws of Conn. vol. 16, pp. 640, 646).   The defendant is collector of internal revenue for the district of Connecticut, appointed under the provision

of the Corporation Tax Act, for the purpose of collecting all taxes due under the act. The taxes were paid by the plaintiff's lessee, as hereafter stated, under protest, and under the provisions of the law the construction of which is involved in this demurrer.

The complaint alleges that on March 30, 1894, the plaintiff leased all of its premises and property, real and personal, of every name and nature (excepting its charter and corporate organization and the right to receive and disburse income), to the United Gas Improvement Company, a Pennsylvania corporation, for the term of 20 years from April 1, 1894, in consideration of an annual rental reserved in the lease, and thereupon the lessee assumed and took possession of the same under and pursuant to the terms of said lease. The lease contained the further provision that during its continuance the lessee is to have the right to demand and receive for its own use and benefit all tolls, income, issues, and profits to be derived from the said demised property and franchises and from the operation and use thereof. The complaint further alleges that the United Gas Improvement Company has continued in the possession and occupation thereof up to and including the date of the writ.

The defendant has answered, and the parts of this answer, the legal sufficiency of which the plaintiff's demurrer challenges, are the sixth, seventh, and eighth paragraphs, which are as follows:

"Sixth. For further answer, the defendant says that the plaintiff corporation was chartered and organized to build and operate gas works, and sell gas products, but was not empowered by its charter or any amendment thereto to lease away its property or franchise, and the lease described in the complaint has never been authorized by any specific act of the General Assembly of the state of Connecticut, nor in any other manner, and that so far as the United Gas Improvement Company carried on the business of the Waterbury Gaslight Company, as set forth in said complaint, the United Gas Improvement Company carried on said business as the agent of the Waterbury Gaslight Company.

"Seventh. At divers and sundry times since April 1, 1894, being the date of the lease described in the plaintiff's complaint, the Waterbury Gaslight Company applied for and obtained the passage of special acts by the General Assembly of the state of Connecticut, amending its charter, which acts explicitly recognized the Waterbury Gaslight Company, and not the United Gas Improvement Company, as the active corporation engaged in the business which the Waterbury Gaslight Company was organized and chartered to perform.

"Eighth. By the terms of the lease described in the complaint, the Waterbury Gaslight Company bears the expense of alterations, improvements, and additions to its plants, mains, meters, and appurtenances, and continues actively in the management and maintenance of its property and the conduct of its business."

The plaintiff demurs to these allegations on three grounds:

(1) Because "the defendant is not concerned with the plaintiff's right to execute its lease to its lessee or the legality of such lease. If there is a lease de facto it cannot be attacked in a collateral proceeding of this character."

(2) Because "the mere fact that charter amendments were applied for by the plaintiff and granted to it by the General Assembly of the state of Connecticut does not constitute the carrying on or doing of business, within the meaning of the act of Congress of August 5, 1909."

(3) Because "the mere fact that the expense of alterations, improvements, and additions, introduced into the plaintiff's complaint by its lessee, are ulti-

mately borne by the plaintiff, does not constitute the carrying on or doing business, within the meaning of the said act of Congress of August 5, 1909."

As the lease in question is set out as an exhibit attached to the complaint, and as this court is bound to take judicial notice of the several special acts referred to, the various allegations in the parts of the answer excepted to as to the legal effect of the lease and the special acts of the General Assembly of the state of Connecticut may be regarded purely as conclusions of law, which the demurrer does not admit. The vital questions, therefore, are: (1) Whether the lease in question was an ultra vires act upon the part of the lessor, so as to warrant it being held void in this proceeding; and (2) whether the plaintiff was "carrying on business," within the meaning of the Corporation Tax Act.

[1] I. I am unable to agree with the proposition that the execution of the lease was an ultra vires act, at least so far as to permit its invalidity to be successfully attacked collaterally. There is always extreme difficulty and confusion in defining the validity, effect, rights, and remedies of an ultra vires act, and the only satisfactory way of dealing with the subject when it arises is by a process of elimination. The lease in question did not work a change in the business, but only a change in its management, and it recites that its execution was duly authorized by a vote of its directors. Moreover, it has been partly performed, and its validity and good faith, for aught that appears on the record, have never been challenged by stockholders or creditors. There was neither abandonment or extension of the original undertaking of the lessor, nor is it alleged that the lease obstructed the carrying on of the original proceedings.

In Featherstonhaugh v. Lee Moore Porcelain Clay Co., L. R. 1 Eq. 318, 336, in a case where minority stockholders of a corporation sought to have set aside a lease of the entire property, Vice Chancellor Wood said:

"Have the company, by this act which they intend to carry into effect, * * * either, on the one hand, abandoned their purposes, * * * or, on the other hand, exceeded their purposes? Have they done either one or the other? It appears to me they have not abandoned the purposes of the company. They have granted a lease for 21 years, and, so far, they have agreed to take a rent for their property, instead of working it themselves and taking the profit. At the end of 21 years they are to have the whole of the property back, and, as it appeared to them (that is the true way to put it, for they are the sole judges on that part of the case), they would have it back in a more profitable condition. * * * They have not exceeded their powers, because nobody can contend that parting with their property for a certain time is exceeding their powers, beyond this, that during all that time they are not carrying on the business."

And the general rule, indeed, may now be considered well settled that, when there is no restraining clause in the charter of a corporation or the statutes of the jurisdiction in which the lessor corporation is located and the property situated, the capacity to make such a lease as the one at bar cannot be questioned, where its good faith is not assailed and it is not unprofitable or injurious to the corporation concerned or its stockholders. In other words, the question of ultra vires in a given case is one which grows, not out of the nature of the corporation, but

of its needs and exigencies, and of the particular circumstances of the case. While the general scope of a corporation may be restricted, its methods of efficient management may not, so long as a breach of trust is not involved. Simpson v. Westminster Palace Hotel Co., 8 H. L. Cas. 711, 720; Temple Grove Seminary v. Cramer, 98 N. Y. 121; Dupee v. Boston Water Power Co., 114 Mass. 37; Bartholomew et al. v. Derby Rubber Co., 69 Conn. 521, 38 Atl. 45, 61 Am. St. Rep. 57.

This view of the law is fully borne out in the very recent case of Cambria Steel Co. v. McCoach, 225 Fed. 278, decided by the District Court for the Eastern District of Pennsylvania on July 28, 1915, where the precise question here involved was argued and decided. That was a suit against the collector of internal revenue to collect taxes assessed against the plaintiff's lessor, which the latter had paid under protest. The defendant contended that the lease was ultra vires, because it lacked legislative authority. The court held (page 281) that while the lease was not made without authorization of law, for a Pennsylvania statute justified it, yet no such legislative authority was necessary to empower the lessor to make such a lease, and relied upon the law as stated by Mr. Justice Sharswood in Ardesco Oil Co. v. North American Oil & Mining Co., 66 Pa. 382, as follows:

"Corporations, unless expressly restrained by the act which establishes them, or some other act of assembly, have and always have had an unlimited power over their respective properties, and may alienate and dispose of the same as fully as any individual may do in respect to his own property."

Had the lease of the United Gas Improvement Company purported or attempted to demise the plaintiff's franchise and its correlative public duties, a more serious question would arise, and the case would probably fall within the rule contended for by the learned district attorney, and within the condemnation of Pittsburgh & Connellsville R. R. Co. v. Bedford & Bridgeport R. R. Co., 81 Pa. at page 111, referred to in the opinion in the Cambria Steel Company Case; but no such attempt is contained in the lease. The distinction between the franchise of a corporation and its corporate property was clearly in the mind of the draughtsman who prepared the lease in question.

[2] II. The defendant's contention that the plaintiff in the last 11 years has obtained the passage of various special acts amending its charter, which recognized the plaintiff, and not its lessee, as the active corporation engaged in the business which the plaintiff was organized and chartered to perform, and that by the terms of the lease the plaintiff bears the expense of alterations, improvements, additions to its plants, mains, meters, and appurtenances, and continues actively in the management and maintenance of its property and the conduct of its business, is not sustained by the terms of the lease nor by the special acts themselves. As I have already indicated, the construction and legal effect of the lease and these special acts must be drawn from the documents themselves, which are before the court, and not from the defendant's statements of their effect and construction. I am convinced, from a careful reading of the adjudged cases, that the plaintiff was not "carrying on or engaged in business" within the meaning of the statute. Since this act went into effect, numerous cases have arisen in-

volving the constitutionality and construction of the statute in question. As bearing upon the precise question here involved, the following may be referred to as decisive of the view taken by the courts: The Supreme Court decisions of the Corporation Tax Cases, 220 U. S. 107, 31 Sup. Ct. 342, 55 L. Ed. 389, Zonne v. Minneapolis Syndicate, 220 U. S. 187, 31 Sup. Ct. 361, 55 L. Ed. 428, McCoach, Collector, v. Minehill & Schuylkill Haven R. R., 228 U. S. 295, 33 Sup. Ct. 419, 57 L. Ed. 842, United States v. Whitridge, 231 U. S. 144, 34 Sup. Ct. 24, 58 L. Ed. 159, and United States v. Emery-Bird-Thayer Realty Co., 237 U. S. 28, 35 Sup. Ct. 499, 59 L. Ed. 825; the decisions of the Circuit Court of Appeals in Anderson v. Morris & E. R. Co. (Second Circuit) 216 Fed. 83, 91, 132 C. C. A. 327, New York Cent. & H. R. R. Co. v. Gill (First Circuit) 219 Fed. 184, 185, 134 C. C. A. 558, Lewellyn v. Pittsburgh, B. & L. E. R. Co. (Third Circuit) 222 Fed. 177, —— C. C. A. ——, Miller v. Snake River Valley R. Co. (Ninth Circuit) 223 Fed. 946, —— C. C. A. ——, and Traction Companies v. Collectors of Internal Revenue (Third Circuit) 223 Fed. 984, —— C. C. A. ——; and the decisions of the District Court for the Eastern District of Pennsylvania in Philadelphia Traction Co. v. McCoach, 224 Fed. 800, and Cambria Steel Co. v. McCoach, supra.

In the Whitridge Case, supra, it was held, as has been previously pointed out by the Supreme Court in former decisions, that Congress by the act in question did not impose a tax upon corporate rights or franchises as such, nor upon the income arising from the conduct of business unless it be carried on by the corporation itself, and that the income derived by receivers of a corporation in their official management did not come within the terms of the act.

In the Minehill Case, supra, it was held that a railway corporation which had leased its lines to another company, the latter operating the railroad exclusively, but the lessor maintaining its corporate existence and collecting and distributing to its stockholders the rental from the lessees and also dividends from investments, is not "carrying on business" within the meaning of the act in question. Mr. Justice Pitney, in delivering the opinion of the court (228 U. S. at page 305, 33 Sup. Ct. at page 423 [57 L. Ed. 842]), said:

"We cannot, however, agree with the contention made in behalf of the government that because the Minehill Company retains its franchise of corporate existence, maintains its organization, and holds itself ready to exercise its franchise of eminent domain, or other reserved powers, if and when required by the lessee, and ready to resume possession of the property at the expiration of the lease, it is therefore to be treated as doing business, in respect to the railroad, within the meaning of the Corporation Tax Law."

In the Emery-Bird-Thayer Case, supra, a realty corporation which simply collected and distributed rent from a specified parcel of land was not held to be "carrying on business," within the meaning of the statute. In the opinion of the court, delivered by Mr. Justice Holmes (237 U. S. at page 32, 35 Sup. Ct. at page 501 [59 L. Ed. 825]), he said:

"The question is rather what the corporation is doing than what it could do."

In the Anderson Case, supra, Judge Rogers, writing for the Circuit Court of Appeals for this Circuit, held that where a railroad corpora-

tion had leased its property for the whole term of its charter, the lessee having sole control of its property and the possession of its road, the fact that the lessor retains its primary franchise of corporate existence, maintained its organization, held an annual meeting of its stockholders, elected directors, and amended its by-laws, and that its directors held a special meeting, elected officers, and appointed an executive committee, was insufficient to show that it was "engaged in business," within the Corporation Tax Act, and furthermore that its issuance of bonds would not be regarded as making it "engaged in business," and in the opinion (216 Fed. at page 91, 132 C. C. A. at page 335) said that the lessor in doing the acts referred to—

"was not 'carrying on or doing business,' within the meaning of the Corporation Tax Act. The meaning of the words 'carrying on or doing business' and 'engaged in business' must be given their ordinary and natural signification, and, given that signification, the act done is not within the meaning of the statute. The lessor company was not an actively operating concern. Under the terms of this lease the lessor corporation had practically gone out of business and was disqualified from any activity respecting the operation and management of the railroad business which it had been incorporated to carry on."

In the Gill Case, supra, Judge Putnam, who delivered the opinion of the court, referred to the statement in Judge Rogers' opinion just quoted from as—

"a sensible interpretation of the statute, and one in harmony with its general terms and purposes."

The Gill Case held, as also did the Lewellyn Case, supra, that the fact that the lessor continued to have its franchise right of eminent domain for the benefit of the lessee did not make it a corporation "carrying on or engaged in business," within the meaning of the Act. In the Gill Case the lessor had, on certain occasions, taken steps at the lessee's request in exercise of its right of eminent domain to obtain additional land necessary for the proper operation of the leased railroad, and in the Lewellyn Case properties in considerable number were not only purchased, but acquired by condemnation proceedings instituted and concluded by the lessor companies pursuant to resolutions by their board of directors, proposed and passed in conformity with the statutes of Pennsylvania.

It of course must be assumed in the case at bar that, if the right of eminent domain was exercised or property was purchased by the lessor, all properties in whichever way acquired would be immediately delivered into the possession of the lessee company, to be exclusively used by it in operating the demised plant under the terms of the lease. In the Cambria Steel Company Case, supra, the lease in question was for 999 years of all the property constituting the manufacturing plant, sites, mines, roads, and coal and other lands of the lessor, together with an assignment to the lessee of all its cash, contracts, and entire business, in consideration of a rental equal to 4 per cent. on the outstanding stock of the lessor, payable directly to its stockholders, together with an additional amount to pay the cost of maintaining its organization. It was held that after the lease the lessor merely existed as landlord of the

lessee, and had no other income than the rent, and was not doing business within the meaning of the Corporation Tax Act.

The authorities cited fully dispose of the defendant's contention that the lease from the plaintiff to the United Gas Improvement Company created the relation of principal and agent between lessor and lessee, and the rationale of all the cases is well summed up in the Traction Companies Cases, supra (223 Fed. at page 988, —— C. C. A. at page ——), as follows:

"The true test of distinction must be, as applied to corporations of this class, whether they are continuing the body and substance of the business for which they were organized and in which they set out, or whether they have substantially retired from it and turned it over to another. If the latter appears, then their tax exempt status must be tested by the further query whether they have, during the critical period, done only such acts as are properly and normally incidental to the status of a mere lessor of such property, or whether they have exercised their peculiar corporate franchises outside of and beyond the fair scope of that status."

As is pointed out in the Traction Companies Case, there is a helpful analogy in observing an individual. It is not usually hard to decide, as the court there says, whether an individual is still "in business" or has retired; "and, if the latter, he does not lose that character because here and there, in the receipt of his income, he does an item of business."

I am convinced, from a careful study of the lease and of the charter of the plaintiff, and the various amendments referred to, that the plaintiff is within the criterion stated and that the demurrer should be sustained.

Decree accordingly.