JULIUS ROSENWALD, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 7351, 12388. Promulgated June 4, 1928.

*Robert N. Miller, Esq.*, *Ward Loveless, Esq.*, and *Sidney Adler, Esq.*, for the petitioner.

*J. W. Fisher, Esq.*, for the respondent.

358

OPINION.

MORRIS: While the sole question presented for consideration by the first allegation of error relates to the inclusion in the petitioner's income of dividends, interest, rents and miscellaneous income alleged to have been assigned by him to The Julius Rosenwald Fund, and, while the same problems arise with respect to all of those items, we deem it advisable to dispose of the dividend item separately, since that question has been heretofore considered and passed upon by the Board.

In *Fred W. Warner*, 5 B. T. A. 963, one of the questions was whether certain income disposed of by the taxpayer under an assignment and two trust indentures, said income being received by the assignee and other beneficiaries, was taxable as income to the taxpayer. The taxpayer there was president of the Oakland Motor Car Co., a subsidiary of General Motors Corporation, in which capacity he was compensated in part with stock of General Motors Corporation. The certificates of stock so issued were not to be delivered to the taxpayer until he had severed his connection with the company. He did receive, however, a certificate evidencing the fact that the stock had been allotted to him. In 1920 the taxpayer in that case entered into the following agreement with his wife, assigning " all his right, title and interest in and to any and all dividends," with respect to 12,500 shares of the stock so allotted to him:

AGREEMENT, made this 2nd day of July, 1920, between Fred W. Warner, of the City of Pontiac, State of Michigan, party of the first part, and Bertha S. Warner, wife of the said first party, party of the second part.

WITNESSETH:

WHEREAS there have been allotted to the first party by General Motors Corporation, a corporation of Delaware, Twelve thousand five hundred (12,500) shares of the common capital stock of said General Motors Corporation, without nominal or par value, for the year 1918, pursuant to the Bonus Plan of said corporation, which said shares are deliverable to the first party on the 31st day of December, 1923, or sooner, as in said Bonus Plan provided; and

WHEREAS the first party desires to assign to the second party the dividends, rights and income payable thereon, or in respect thereto while said stock is held by General Motors Corporation.

Now THEREFORE, in consideration of the premises, the sum of Ten ($10) dollars to him in hand paid, receipt whereof is hereby acknowledged, and other valuable consideration, the first party hereby assigns, transfers, sets over and

delivers unto the second party, all his right, title and interest in and to any and all dividends, rights or income payable or accruing on or in respect to the said Twelve thousand five hundred (12,500) shares of the common stock of General Motors Corporation without nominal or par value, held by said General Motors Corporation for the first party, pursuant to said Bonus Plan, represented by certificate numbered C15063 and hereby authorizes and empowers the said General Motors Corporation to pay and deliver any and all dividends, profits or rights payable thereon, or in respect thereto, to the said Bertha S. Warner.

In WITNESS WHEREOF, the said first party has hereunto set his hand and affixed his seal the year and day first above mentioned.

(Signed)     FRED W. WARNER.

The taxpayer there, as in the instant case, reported his income on the basis of cash receipts and disbursements. Notwithstanding the legal formalities present in the aforementioned assignment, such as the execution under seal and the recitation of consideration, and the fact that the taxpayer's income was reported on the cash basis, the Board held that the taxpayer was the owner of the stock and was liable for the tax upon the dividends derived therefrom.

The purported assignment in the instant case was not under seal, there was no mention of consideration therein, and in fact the petitioner sold, inadvertently as he explains, a great number of shares of stock upon which the dividends had been assigned, the effect of which sale naturally was to nullify that assignment, and consequently we believe, considering these factors, that the instant case has considerably less merit than the appeal of *Fred W. Warner, supra.*

In view of that opinion and the opinion in *Alfred Le Blanc,* 7 B. T. A. 256, we conclude that the respondent committed no error in adding the amounts of these dividends to the petitioner's income for the years in controversy.

We come now to the items of interest on a promissory note, rents from certain properties owned by the petitioner and Liberty Bond interest purported to have been assigned or given to the Julius Rosenwald Fund. Since all of the facts are fully set forth in the findings of fact herein, we do not deem it necessary to repeat them here except so far as they may become pertinent to the discussion.

In *Ormsby McKnight Mitchel,* 1 B. T. A. 143, the taxpayer was a member of a partnership, having a 51 per cent interest therein, and he entered into an agreement with his wife, whereby, for a valuable consideration, she should receive one-half of the profits accruing to the taxpayer from that partnership, also that she should be liable to pay him one-half of the losses which might be sustained by reason of his interest in the partnership. It was not contended in that proceeding that his wife thereby became a member of the partnership. The question raised there was whether by virtue of that agreement one-half of the income of the taxpayer covered by the agreement

with his wife constituted income to him within the meaning of the taxing statutes. The Board said in that case, " The income from taxpayer's interest in the partnership is first income to him, and no matter how he tries to dispose of it or does dispose of it, it is taxable to him as income from his interest therein." The Board further said, " If the contention made should prevail, the taxing law would be a nullity and an act of Congress imposing taxes made impotent at the will of the taxpayer. If he can escape taxation on one-half the profits of the partnership by agreement, there is no reason why, by another agreement, he can not escape taxation on the other half; and if this taxpayer can do so there is no end to the agreements which may be made, and income as such will cease to be an object of taxation."

In *American Telegraph & Cable Co.*, 2 B. T. A. 991, the taxpayer leased all its properties for a certain rental, the lessee to pay the entire rental directly to the stockholders of the lessor as dividends. The taxpayer there contended, *inter alia*, that none of the payments stipulated in the lease between itself and the lessee constituted income to it. The Board said in holding the income taxable to the lessor, after considering a number of cases cited *infra*, " The Telegraph Company [meaning lessee] owes and pays rent to the taxpayer. The Telegraph Company is the agent of the taxpayer distributing that rent among its stockholders."

In *Samuel V. Woods*, 5 B. T. A. 413, the petitioner owned certain property in fee which was leased to one Stafford and others who subleased to the Big Run Coal Co. That lease provided that the lessee pay certain portions of the rents and royalties as they became due to third persons. The Board said, citing *Rensselaer & Saratoga R. R. Co.* v. *Irwin*, 249 Fed. 726; certiorari denied, 246 U. S. 671, " It is clearly authority for taxing the owner in this case where, so far as the record shows, he merely designates another to receive his pleasure. Conceded that he did not have actual possession of the amounts so paid, possession is not the determining factor of income even on the cash receipts basis." The Board said further, " Such a voluntary act in anticipation of actual receipt and before the income exists can only affect the income when it actually arises, and in our opinion it may properly be treated as coming to him and immediately disposed of." In the case of *Rensselaer & Saratoga R. R. Co.* v. *Irwin*, *supra*, the corporation leased its properties and agreed that the rental should be paid to its stockholders and bondholders. The taxpayer there contended, as in the instant case, that it did not receive the rents and did not have the right to receive them and consequently the amounts should not be included in its taxable income. The court said:

It is true that the rent of its road does not go into the plaintiff's treasury and that it has no means of withholding the tax from it. It is also true that the rent reserved by the lease is paid by the lessee in fixed sums to third parties. All the same, the rent is the property of the plaintiff, and remains such, though by the terms of the lease paid out to others, whose rights are derived through it. While the rent is a debt of the lessee to the lessor, it is, as between the lessor and its stockholders, the lessor's income, out of which the dividends, if any, are to be paid.

The application of the rent under the lease is a mere labor-saving device, the effect being exactly the same as if it be paid to the lessor and by it paid out as far as necessary to bondholders for interest, and the surplus in dividends to its stockholders. The description of the fixed sum to be paid by the lessee of 8 per cent to the lessor's stockholders as a dividend shows that the payment is made as agent of the lessor.

Also see *Blalock* v. *Georgia Ry. & Electric Co.*, 246 Fed. 387; *Anderson* v. *Morris & Essex R. R. Co.*, 216 Fed. 83; *West End Street Ry. Co.* v. *Malloy*, 246 Fed. 625; *Houston Belt & Terminal Ry. Co.* v. *United States*, 250 Fed. 1; *Boston Terminal Co.* v. *Gill*, 246 Fed. 664; *Hamilton* v. *Kentucky & Indiana Terminal R. R. Co.*, 289 Fed. 20.

In all the cases cited, *supra*, there appear to have been legally binding agreements, yet notwithstanding those agreements it was held that the income was taxable to the assignor. In respect to the documents purporting to be assignments in the instant case, we are of the opinion that they constitute nothing more than assignments to the Julius Rosenwald Fund of dividends, interest, and rent as, if, and when they may become due and payable to the petitioner. Certain language in some of the assignments is clearly indicative of that conclusion. In the instrument assigning the dividends from Gimbel Brothers stock the following language was used.

I hereby assign to you all dividends to which I may become entitled as the owner of any and all shares * * *.

The assignment of dividends on other stock contains almost identical language. The assignment of the rent payable under a lease to the Troy Laundry Machinery Co. is of " all rents henceforth and to and including April 30, 1923, payable to me under lease," etc. Furthermore, the communications directed to the obligors by the petitioner were nothing more than orders to pay said Fund as, if, and when those obligations became due and payable, and said offers and orders were subject to the control of the petitioner at all times and may have been altered, modified, or repealed at any time at his will.

The petitioner contends that he entered into an agreement of novation whereby he ceased to be the holder of the rental obligation for a period of five years and the Fund, a corporation, became the holder, and in the case of interest on the notes and mortgages, the contractual obligation of the obligor to him was, by novation, discharged for a period of five years, and a contract obligation to the

corporation was established in its stead. Apparently a similar contention was raised in *Rensselaer & Saratoga R. R. Co.*, *supra*, as the court used the following language in the course of its opinion:

I do not see that the doctrine of novation has anything to do with this case. If A owes B $10,000 as rent for his property, to be paid annually, January 1st, and B owes C $10,000 falling due January 1st, and B says to A, "You pay the money you owe me to C, as I owe him," and this is done, the debt of A to B is discharged. He has paid the money to C pursuant to the authority and direction of B, and C has accepted it. But when B comes to make out his income tax return, can he say that $10,000 is not to be taken into account as income, inasmuch as he never received the money, but had it paid to C, and applied in payment of his debt to C? Is it any the less income derived from the leasing of his property for the reason he directs and consents to the application of it in payment of his just debt?

We can see no difference between the direction to make the payment of the income, and the obligor's consent thereto as a gift to a third person, and the direction to make such a payment in settlement of a debt.

Here, in our opinion, there was not even a binding and irrevocable assignment as contended by the petitioner. In order to constitute an assignment enforcible, in law or in equity, there must be a valid consideration the same as in any other contracts. Consideration has been defined by Professor Williston in his treatise on contracts as " a detriment incurred by the promissee or a benefit received by the promissor at the request of the promisor." There is no reference to consideration in these purported assignments nor is there anything from which consideration may be logically implied. In that respect at least we believe the petitioner's contention has less merit than the contentions urged in some of the cases hereinabove cited.

In the recent decision of *Bing* v. *Bowers*, 22 Fed. (2d) 450, District Court, Southern District of New York, the court used the following language which is very pertinent to the issue involved herein:

To permit the assignor of future income from his own property to escape taxation thereon by a gift grant in advance of the receipt by him of such income would by indirection enlarge the limited class of deductions established by statute. As long as he remains the owner of the property, the income therefrom should be taxable to him as fully, when he grants it as a gift in advance of its receipt, as it clearly is despite a gift thereof immediately after its receipt.

With respect to the coupons clipped from certain United States Liberty loan bonds of the third issue and given to The Julius Rosenwald Fund by manual delivery prior to maturity, which were collected by that corporation at some time during 1919, we have what at first blush seems quite different from the other transactions here-

inabove considered. However, stripping the transaction of all its intricacies and considering the substance of the matter rather than the form, have we anything other than a mere gift of interest on a negotiable instrument which is to become due in the future? Interest coupons attached to a bond are only evidence of an indebtedness, a mere symbol of ownership, which ripens into a claim at some given date. What possible difference can it make whether the recipient of the gift evidences his claim by an assignment, as was done in the case of the promissory note herein, or by coupons which have been detached from the bond itself and delivered to him? We can see no material difference. Suppose in the instant case these had not been coupon bonds and the petitioner had assigned the interest thereon to The Julius Rosenwald Fund, would not the situation have been the same as in the cases hereinbefore cited? In *Fred Warner*, *supra*, there was a perfectly valid assignment of dividends, yet the Board said, "the dividend from the stores, the dividends or right to dividends on which were assigned to the taxpayer's wife, was income to the taxpayer before it could be diverted to another." We are, therefore, of the opinion that the interest on these Liberty bonds is not unlike the interest on the negotiable promissory note hereinbefore considered, and that, therefore, it was, first, income to the petitioner for tax purposes before it could be diverted to another.

Petitioner's brief is a rather lengthy one and presents many arguments in support of his contentions, all of which we obviously can not consider in this opinion. Suffice to say, however, that we have given very careful study to the arguments made and the cases relied upon. Since the petitioner has relied so strongly upon the case of *Irwin* v. *Gavit*, 268 U. S. 161, it may not be inappropriate to say that we have examined the decision in that case very carefully and believe it clearly distinguishable from the instant case.

Considering all the facts and circumstances in the light of the relationship of the petitioner to The Julius Rosenwald Fund, together with the cited cases dealing with the subject of assignment of income, we are of the opinion that the respondent was correct in adding to the income of the petitioner for the taxable years in controversy the amounts of interest, rents, and Liberty bond interest alleged to have been assigned or given in those years to The Julius Rosenwald Fund.

As no testimony was offered by petitioner in support of the second issue herein, we must sustain the respondent's determination with respect thereto.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

LANSDON, SMITH, PHILLIPS, and MILLIKEN dissent in part.