WARD COMPANY, INC., d/b/a Ward Motor-Inn, Respondent,

v.

DEPARTMENT OF REVENUE, State of South Dakota, Appellant.

No. 12612.

Supreme Court of South Dakota.

Argued Sept. 13, 1979.

Decided Nov. 7, 1979.

Carlyle E. Richards of Ronayne & Richards, Aberdeen, for respondent.

Gene R. Woodle, Asst. Atty. Gen., Pierre, for appellant.

DUNN, Justice.

In an action brought by the South Dakota Department of Revenue (Department), Mr. Greg Stevens, hearing examiner, determined that Ward Company, Inc., d/b/a Ward Motor-Inn (Ward), was not liable for sales tax and penalties for the period from January 1, 1977, through June 20, 1977. This proposal was rejected by the Secretary of Revenue (Secretary), who ordered Ward to pay sales tax and penalties amounting to

$8,828.49. The Secretary's decision was reached before the oral testimony presented to the hearing examiner had been transcribed. Upon appeal by Ward to the Fifth Judicial Circuit Court, the court, deciding the matter upon briefs without further testimony or evidence, held Ward not liable for the tax and penalties. This appeal is taken by the Department from that judgment. We affirm.

Ward operated a hotel, lounge and restaurant in Aberdeen, South Dakota, under authorized retail sales tax license number 06–06204–1 from August 1974, until February 10, 1976, when Anton Rohrich took possession of the restaurant and lounge pursuant to a written agreement. The restaurant and lounge were then operated under the names and style of Tony's Steak and Prime and Sting Lounge, respectively. The transfer of the business to Rohrich was reported to the Department by one of its agents, Mr. Ed Guidice.

Rohrich never applied for a sales tax license of his own. Only one sales tax return was filed for the first quarter of 1976 for the restaurant, lounge and hotel; it was signed by David Luce, Manager, and the tax was paid by Ward. This sales tax return and all those subsequent were made under the sales tax license issued in August of 1974, to Ward.

Likewise, there was only one sales tax return filed for the second quarter of 1976; it was signed by Richard Tarver, president of Ward, although Tarver testified that the signature was not his. The record does not indicate who actually paid the sales tax for this quarter.

Sometime during the third quarter of 1976, Rohrich additionally leased the hotel business from Ward. The leasing of the entire business (restaurant, lounge and hotel) was formalized in a lease dated September 1, 1976. Among other things, lessee Rohrich agreed to pay rent in the specified amount of $6,132 per month to Ward. No mention was made in the lease regarding sales tax. The lease conferred upon Ward the right to examine quarterly financial statements prepared by Rohrich.

The return for the third quarter of 1976 was signed by Rohrich and was accompanied by a check from Tony's Steak and Prime. The check, however, was returned for insufficient funds. Tarver was notified of the delinquent tax and it was eventually paid, together with the penalty. The record indicated that Mr. Guidice informed Tarver of the delinquent check and that Tarver contacted Rohrich on the matter. The record is once again unclear, however, whether Ward or Rohrich actually paid the tax and penalty.

During the fourth quarter of 1976, Ward submitted an application for renewal of its retail liquor license for the year 1977. The license was granted by the Department. The record indicates the sales tax from this final quarter of 1976 was paid by Rohrich.

A sales tax return was filed under the same license for the first quarter of 1977 and was signed by Rohrich. The accompanying check was returned for insufficient funds. The tax for this quarter has never been paid and is subject to a penalty.

Upon expiration of the lease, Ward repossessed the premises on June 21, 1977, and began operating the restaurant, lounge and hotel. Ward paid sales tax due by reason of its operation of the business from June 21 through June 30, 1977. The remainder of the sales tax due in the second quarter of 1977, i. e., from April 1, 1977, through June 20, 1977, has never been paid and is subject to a penalty. Hence, from January 1, 1977, through June 20, 1977, the Department has received no sales tax from this business enterprise.

The scope of review of this type of administrative decision is established by SDCL 1–26–36, which allows this court to reverse the Secretary's decision if, among other specified reasons, the decision was (1) made upon unlawful procedure, or (2) was unsupported by substantial evidence on the whole record. We address the substantial evidence issue first.

The issue on review is not whether there was substantial evidence contrary to the Secretary's findings, but rather, wheth-

er there is substantial evidence to support the decision of the Secretary. *Application of Ed Phillips & Sons Company*, 86 S.D. 326, 195 N.W.2d 400 (1972). We find no evidence of a substantial nature to support the Secretary's decision.

■ The controlling statute is SDCL 10–45–2, as amended, which provides in pertinent part: "There is hereby imposed a tax upon the privilege of engaging in business as a retailer * * * upon * * * all sales of tangible personal property * * * sold at retail * * *." "Retailer" is specifically defined by SDCL 10–45–1 as one engaged in the business of selling tangible goods, wares or merchandise at retail. Likewise, "at retail" is defined by subsection (5) as being the sale of tangible or personal property to the consumer or user thereof, for any purpose other than resale. Finally, "business" is statutorily defined in subsection (1) as being activity engaged in or caused to be engaged in for any benefit, direct or indirect. We find no convincing evidence to the effect that Ward operated as a retailer during the time period at issue.

Ward had completely divested itself of control of the business. Rohrich was given complete control over the premises and the business activities. It is of the utmost significance that the rent to be paid was not contingent upon the profitability of the business.' Rather, the rent was a specified amount. If the profitability of the business had been the determining factor in the amount of rent paid, the inference could be more easily drawn that Ward had a hand in the operation of the business, or that Rohrich was acting solely as Ward's agent. Without such a profitability contingency, however, it is clear that Rohrich had complete control of the business operation and was not an agent of Ward. Additional evidence that there was no agency relationship is that Tarver no longer had access to the post office box formerly used by Ward.

The case of *Lewellyn v. Pittsburgh, B. & L. E. R. Co.*, 222 F. 177 (3rd Cir. 1915), is pertinent and persuasive. Pursuant to a lease, the possession, control and operation of a railroad line were transferred to the lessee. In finding the lessor not liable for an excise tax imposed upon all those corporations "'organized for profit * * * and *engaged in business,*'" the court stated that the lessor had parted with all control over operations and rights to profits and, hence, was not engaged in business during the disputed period. The court reached this conclusion despite the fact that the lessor used its right of eminent domain on several occasions to obtain additional land for operation of the railroad through acquisition by condemnation proceedings or by purchase. Although these acquisitions were made at the request of the lessee, only the lessor had the power to decide to use its right of eminent domain. We conclude that the deciding factors in *Lewellyn* were that the lessor had no day-to-day control over the operations, and especially that the lessor's rent was not contingent upon the profitability of the business.

The *Lewellyn* case is not an isolated example. There are numerous cases that cite to *Lewellyn* in finding that a lessor was not "carrying on business." They include *West End St. Ry. Co. v. Malley*, 246 F. 625 (1st Cir. 1917); *Jasper & E. Ry. Co. v. Walker*, 238 F. 533 (5th Cir. 1917); *Public Service Ry. Co. v. Herold*, 229 F. 902 (3rd Cir. 1916); *Traction Cos. v. Collectors of Internal Revenue*, 223 F. 984 (6th Cir. 1915); and *Waterbury Gaslight Co. v. Walsh*, 228 F. 54 (D.C. Conn.1915).

The fact that the lease provided Ward with the right to examine Rohrich's quarterly financial statements does not put this case outside the purview of *Lewellyn*. First, we hesitate to characterize the examination of such documents as an "act of business." There is nothing in such an examination that inherently implies the performance of business activities. We believe that only if directive business decisions were actually made on Ward's part would we have a situation where there were business activities under Ward's control. The record is completely void of evidence showing Ward engaged in such directives.

■ It is unclear from the *Lewellyn* opinion whether the court actually considered

the lessor's exercise of eminent domain a business act. But it is very clear that the *Lewellyn* court did not view the performance of isolated business acts as "carrying on business;" rather, to "carry on business" means sustained business activity on a continuous basis—performing all the acts incident to a continuing business—and not business acts being done from time to time. It is significant to note that the *Lewellyn* court considered the phrases "engaged in business" and "carrying on business" as being indistinguishable. The pertinent South Dakota statute used the words "*engaging in business* as a retailer." (emphasis added) SDCL 10–45–2. The conclusion to be reached is that even if we had chosen to consider Ward's examination of Rohrich's quarterly statements as "business activity" Ward would still not be considered as having "engaged in business" as the term is employed in our statute.

Most important of all, of course, is the fact that there is not one scintilla of evidence that Ward at any time actually examined these quarterly statements. The record is totally lacking in this regard. Mr. Justice Holmes, discussing the meaning of "carrying on business" in *United States v. Emery, Bird, Thayer R. Co.*, 237 U.S. 28, 32, 35 S.Ct. 499, 501, 59 L.Ed. 825, 827 (1915), stated that "[t]he question is rather what the corporation is doing than what it could do."

■ The Department puts great emphasis upon the liquor license issue. We find the Department's argument unpersuasive. The facts that Ward retained its liquor license at all times, that Rohrich never applied for a liquor license, and that Ward did apply for a renewal of its license for the year 1977 are irrelevant to the question of whether Ward was operating as a retailer. We believe it is more correct to take the statute that defines "retailer" at its face, i. e., we feel that without proof that Ward actually made wholesale purchases or sales of tangible personal property at retail the fact that it held a liquor license does not make it liable for sales tax.

There is no statutory provision to compel a person holding a liquor license to actually operate a liquor business. Likewise, Ward was not statutorily forced to surrender its liquor license. The fact that Ward applied for renewal of its liquor license in 1977 does not indicate that it was operating as a retailer. A liquor license is a valuable, saleable asset, and Ward should not be penalized for protecting it. Further, its written lease to Rohrich was scheduled to terminate in June of 1977. The evidence indicates that Rohrich was defaulting and that Ward was preparing to take over the business in June. In fact, Ward did take over the business and paid retail sales tax in June of 1977, and again had use for an active liquor license.

Whether Rohrich was acting illegally in not procuring a sales tax license and a liquor license would be a proper subject for criminal sanction under SDCL 10–45–48 and SDCL 35–10–7, respectively. If some hidden conspiracy existed between Ward and Rohrich as to these licenses, that also would be a proper subject for investigation and prosecution by the proper authorities. There is no question that the Department through its agent was fully aware of the lease and the retail operation of the business by Rohrich without a retail sales tax license at all pertinent dates hereto. No sanctions were taken as long as the tax was paid by someone.

None of these issues is before this court. We simply have to determine who was operating as a retailer during this period and was subject to sales tax under SDCL 10–45–2. The overwhelming evidence in this record establishes that Rohrich was the retailer and that Ward was the lessor of the premises on a cash rent basis from January 1, 1977, through June 20, 1977.

In view of this decision, we do not reach the contention that the Secretary used improper procedures.

The judgment of the trial court is affirmed.

All the Justices concur.