McCOACH, Internal Revenue Collector, v. CONTINENTAL PASSENGER RY. CO. OF PHILADELPHIA.

(Circuit Court of Appeals, Third Circuit. May 19, 1916.)

Nos. 2097–2101.

1. INTERNAL REVENUE ⬅9—EXCISE TAX ON CORPORATIONS—"DOING BUSINESS."

An operating agreement by which a street railroad company surrenders its own and leased lines to the possession of another company for operation for a term of 999 years, in consideration of annual rentals and the payment of interest on its indebtedness and that of its lessors, does not differ in legal effect from a lease, and the lessor is not subject to the excise tax imposed by the Corporation Tax Law (Act Aug. 5, 1909, c. 6, § 38, 36 Stat. 112 [Comp. St. 1913, § 6300]), as "doing business" through the operating company as its agent.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. ⬅9.

For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

2. INTERNAL REVENUE ⬅9—EXCISE TAX ON CORPORATIONS—DOING BUSINESS.

A corporation, which has ceased to pursue the occupation for which it was organized by reason of the leasing of its property, may continue to exist, and to receive and disburse rentals, and pay or renew its debts, or create new indebtedness, without being subject to the excise tax for "doing business" under such statute.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. ⬅9.]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Actions at law by the Continental Passenger Railway Company of Philadelphia, by the Union Passenger Railway Company, by the Philadelphia Traction Company, by the West Philadelphia Passenger Railway Company and by the Thirteenth and Fifteenth Streets Passenger Railway Company against William McCoach, Collector of Internal Revenue. Judgments for plaintiffs, and defendant brings error. Affirmed.

For opinion below, see 224 Fed. 800.

Francis Fisher Kane, U. S. Atty., and Edward S. Kremp, Asst. U. S. Atty., both of Philadelphia, Pa., for plaintiff in error.

Boyd Lee Spahr and Ellis Ames Ballard, both of Philadelphia, Pa., for defendants in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. These actions were brought to recover corporation taxes for the year 1909, illegally collected from the plaintiff corporations. They were tried together by the District Court on an agreed state of facts without the intervention of a jury. Secs. 649 and 700 Rev. Stat. (Comp. St. 1913, §§ 1587, 1668). The single question was whether certain acts of the corporations constitute "doing business" within the meaning of the Corporation Tax Law. Act Aug. 5, 1909, c. 6, 36 Stat. 112, § 38 (U. S. Comp. Stat. 1913, § 6300). The court found for the plaintiffs and entered judgments for the amounts stipulated. 224 Fed. 800. The defendant tax collector sued out these writs, raising the same question for review.

The actions arose out of the relation of the plaintiff corporations to the complex street railway system of Philadelphia, and out of the conduct of those corporations in performing their obligations in that relation, a full recital of which is quite unnecessary to the present consideration. It will be sufficient only to outline the part of the system formed by these corporations, and to state with particularity only so much thereof as will disclose the legal aspects of the relation and develop the acts of the corporations which are specified to amount to "doing business" within the meaning of the law.

All the companies presently to be named were incorporated by special or under general acts of the Commonwealth of Pennsylvania.

The Continental Passenger Railway Company was incorporated in 1873 with full power to construct and operate a street railway in the City of Philadelphia.

On July 1, 1879, the Seventeenth and Nineteenth Streets Railway Company, having previously been incorporated with like power, leased to the Continental Company its entire property for a term of 99 years, in consideration of an annual rental and the payment of interest and principal of its bonded indebtedness.

On January 1, 1880, the Continental Company leased the railway property which it owned and the property which it acquired from the Seventeenth and Nineteenth Streets Company, to the Union Passenger Railway Company for a term of 99 years, in consideration of

an annual rental and the payment of all its obligation, including those assumed as well as those created.

At about this period there occurred a radical change in street railway motive power, and the cable made its advent. To operate street railways by this power, the Philadelphia Traction Company was incorporated in 1883. It was not authorized by its charter to hold property by lease. It was given authority, however, to operate street railways of other corporations by the power it provided, under agreements of operation, by which railway corporations turned over to it their railway properties and surrendered their operation as completely as by lease.

Having grown large by many leases similar to that of the Continental Company, the Union Passenger Company, on June 30, 1884, entered into an operating agreement with the Philadelphia Traction Company, by which it surrendered the possession and operation of its properties and the properties acquired from the Continental Company, for a term of 999 years, in consideration of annual rentals and the payment of interest on its own obligations and on the obligations of the Continental Company and the Seventeenth and Nineteenth Streets Company.

On November 28, 1888, while the operating agreement was still in force, the Philadelphia Traction Company surrendered its charter in accordance with the provisions of the Act of Assembly of Pennsylvania of March 22, 1887 (P. L. 8), receiving in return letters patent under that act. The Philadelphia Traction Company continued for a time to operate under the agreement between it and the Union Passenger Company the several properties thereby obtained.

At about this period electricity appeared as a motive power for street railways, and the Union Traction Company was incorporated as a traction motor company, with authority not only to electrically operate but to lease the properties of railway corporations.

On October 1, 1895, the Philadelphia Traction Company leased all its properties, including those acquired by the recited transactions, to the Union Traction Company for a period of 999 years, on the usual consideration of fixed rentals and the assumption of the direct and indirect obligations of the underlying corporations.

The Union Traction Company operated these properties until July 1, 1902, when it leased them, together with many others, to the Philadelphia Rapid Transit Company, for a period of 999 years, under the usual covenants as to annual rentals and the assumption of obligations of the underlying corporations in the line of succession.

It is not disputed that as these leases and operating agreements were from time to time entered into, one corporation surrendered and the succeeding corporation assumed the entire operation and control of the properties demised or transferred, and it is conceded, that during the year 1909 when the taxes in question were collected, the properties were wholly operated by the Philadelphia Rapid Transit Company, and the plaintiff underlying corporations had no relation of management or control to them whatsoever.

During the year 1909, while the Philadelphia Rapid Transit Company was so operating the properties and was producing from them

the revenues with which to pay the rentals and interest obligations under the successive leases and operating agreements, the underlying corporations or some of them performed all or a number of the acts which the defendant tax collector charges amount to "doing business" within the meaning of the law. These may be defined to be (a) operating property by an agent, evidenced by the operating agreement between the Union Passenger Company and the Philadelphia Traction Company; (b) the reduction of corporation bonded indebtedness by means of a sinking fund; (c) renewal of corporation bonded indebtedness by appropriate corporate action; and (d) making payment of rentals and interest by one underlying corporation to and upon the obligations of a corporation underlying it.

[1] These acts may therefore be divided into four classes. The first is a legal deduction rather than an act, which is, in effect, that when the Union Passenger Company entered into an operating agreement with the Philadelphia Traction Company for the operation of its property and the properties of its underlying corporations, it constituted the Philadelphia Traction Company its operating agent, and through that agency, the Union Passenger Company itself continued to engage in and carry on the business for which it was incorporated, for the privilege of doing which it was taxable under the law. We are not impressed by this contention. We discern no difference between an operating agreement of this kind and the customary lease by which one railway corporation takes over and operates the property of another, when considered with regard to carrying on business with that property. By such an agreement, one corporation surrenders and the other assumes and exercises control over the property and its operation, as fully and as completely as though·the transfer had been effected by the recognized method of a lease. We are therefore of opinion that during the tax year none of the plaintiff corporations was engaged in the business of operating its property through an operating agent, and was not, even thus indirectly, "doing business" within the meaning of the law.

[2] In reducing their indebtedness by means of a sinking fund and in renewing their bonded indebtedness by extending the terms thereof, the corporations, though performing corporate acts in the exercise of corporate powers, were not pursuing the body and the substance of the business for which they were organized, for which alone the tax is exacted. Traction Companies v. Collectors, infra. The courts have repeatedly held, that in creating a new debt by an issue of stock or bonds to meet a situation contemplated by a lease, and in providing an issue of bonds to refund a maturing obligation, a lessor corporation is not doing business within the meaning of the act. Public Service Ry. Co. v. Herold, 229 Fed. 902, —— C. C. A. ——; Public Service Railway Co. v. Moffet, Id.; Traction Companies v. Collectors (C. C. A. 6th) 223 Fed. 984, 139 C. C. A. 360; Anderson v. Morris and Essex R. R. Co. (C. C. A. 1st) 216 Fed. 83, 132 C. C. A. 327, cited with approval in N. Y. C. & H. R. R. Co. v. Gill (C. C. A. 2d) 219 Fed. 184, 134 C. C. A. 558, and Lewellyn v. Pittsburgh B. & L. E. R. Co. (C. C. A. 3d) 222 Fed. 177, 137 C. C. A. 617. It would

add nothing to this decision to repeat the discussion upon this subject appearing in these cases. It is sufficient to say, that the cases before us are within the reason of the cases cited, and that we are of opinion, in taking corporate steps to retire or renew their bonded obligations, the plaintiff corporations were not doing business within the meaning of the act.

While it is conceded that none of the plaintiff corporations was physically operating the railway embraced in any contract or lease, it is maintained that certain of them received money either directly or indirectly from the operating corporation and disbursed it to their several underlying corporations in discharge of their assumed obligations, and in so doing they were carrying on business within the meaning of the act.

In disbursing money received from the operating corporation, an underlying corporation did nothing ·more than pay its debts. These debts were incurred prior to the tax year and did not grow out of acts of the corporations in connection with the operation of properties, either owned or leased. The payment of a debt disassociated with the operation of property is not doing business within the meaning of the law,· McCoach v. Minehill R. R. Co., supra; and the fact that a debt is assumed rather than created by the one paying it, does not change the character of the act of payment. A corporation, which has ceased to do business by ceasing to pursue the occupation for which it was organized, may continue to exist and to receive rentals for the use of its property and to pay its debts without being taxed for that privilege. In its property it may have absolute or a qualified ownership, or against it there may be incumbrances created either by it or by a predecessor, with a corresponding liability on its part to discharge the same. The disbursement of money in discharge of a corporation's obligations to others is in the sense of doing business no different from the receipt of money in discharge of an obligation to it, and the payment of a debt assumed is not distinguishable in the sense of doing business from the payment of a debt created, or a debt imposed, as by a tax. McCoach v. Minehill R. R. Co., supra. We are of opinion that the application of money received from the operating corporation to the debts assumed first by one corporation and then by another in the train of leases, does not amount to doing business within the meaning of the Corporation Tax Law.

The judgments below are affirmed.

⬦⟝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes