JASPER & E. RY. CO. et al. v. WALKER, Collector of Internal Revenue.

(Circuit Court of Appeals, Fifth Circuit. January 2, 1917.)

No. 2820.

INTERNAL REVENUE ⬤⇒9—EXCISE ON CORPORATIONS—"DOING BUSINESS."

A railroad corporation, which had leased all its property to another, which operated and maintained it, paying a fixed rental to the lessor, is not carrying on or doing business, within Act Aug. 5, 1909, c. 6, § 38, 36 Stat. 112 (Comp. St. 1913, §§ 6300–6307), imposing an excise tax on corporations carrying on or doing business during the preceding year, though such corporation maintained its corporate existence, and has an office, where it receives the rental and distributes it among its stockholders, and though, as required by the lease, it has during the year made certain improvements on the property, paid for by the sale of old material or by certificates of indebtedness of the lessee, since the expression "doing business" in that statute is one in common use, which has the same meaning applied to a corporation as to a natural person, and does not

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

include one who has retired from business and is merely maintaining property leased by him to another.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. <mark>&#8258;</mark>9.

For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

In Error to the District Court of the United States for the Western District of Texas; Thomas S. Maxey, Judge.

Four separate actions by the Jasper & Eastern Railway Company and others against A. S. Walker, Collector of Internal Revenue, which were consolidated for trial. Judgment for defendant, and plaintiffs bring error. Reversed and remanded, with direction to enter judgment for each plaintiff.

J. W. Terry and A. H. Culwell, both of Galveston, Tex., for plaintiffs in error.

J. L. Camp, U. S. Atty., of San Antonio, Tex. (Hugh R. Robertson, Asst. U. S. Atty., of San Antonio, Tex., on the brief), for defendant in error.

Before PARDEE and WALKER, Circuit Judges, and FOSTER, District Judge.

WALKER, Circuit Judge. These four cases were consolidated and tried together by the court, a jury being waived, on an agreed statement of facts, and resulted in a judgment in favor of the defendant in error, who is the collector of internal revenue for the district of Texas. The plaintiff in each of the suits is a Texas railroad corporation, and each of the suits was for the recovery of a tax for the year 1912, paid under protest by the plaintiff under the Corporation Tax Act of 1909. The sole claim made in the several suits was that the tax had been illegally assessed, because the plaintiff, in the year 1912, was not "engaged in business," within the meaning of the act. The District Court ruled against these claims, holding that the plaintiff in each of the cases was "engaged in business" during the year for which the tax was assessed.

The facts disclosed may be summarized as follows: Each of the plaintiffs is the owner of a railroad in Texas, and its appurtenances and equipment, including rolling stock, which, prior to 1912, under authority conferred by a Texas statute, it leased to another corporation, the Gulf, Colorado & Santa Fé Railway Company, for a period of years extending beyond 1912. The lessee agreed to maintain and operate at its own expense during the term of the lease the leased railroad lines and the appurtenances thereto, and to pay as rentals all interest on bonds or other obligations of the lessor, all taxes, all rentals and other sums which the lessor shall become liable to pay during the term of the lease, all necessary expenses incurred by the lessor for the purpose of maintaining and perpetuating its organization, and annually a sum equal to 6 per cent. on the par value of the capital stock of the lessor, issued when the lease was made or thereafter issued with the written consent of the lessee. The lease contained the following provisions:

"Any portion of the demised premises appurtenant to the said line of railway, now held, or which may be acquired, for any purpose incidental to the operation thereof, such as premises acquired or held for the purpose of stations, depots, shops, or other buildings, or for obtaining gravel, fuel, or other materials, for use or sale, which, in the judgment of the lessee, its successors or assigns shall be no longer requisite for use for the purposes for which the same shall have been acquired or used, and likewise any part of the track, sidings, or roadway which shall have been thrown out of use by reason of straightening or alteration of the line of road, and any rails, ties, or other materials constituting a part or parts of the said line of railway for which other materials of at least equal value shall have been substituted, may be sold or disposed of by the lessee, its successors or assigns, as may be authorized by law; but the proceeds of any such sale shall be applied to the betterment or improvement or repayment of expenses incurred in the betterment or improvement of the remainder of the demised premises, or the payent or reimbursement of payments for said substituted materials, or in the acquisition of other property, which forthwith shall be transferred to the lessor, its successors and assigns, in exchange for the property sold, and shall become subject to the operation of this lease. * * *

"In the event that at any time during the continuance of said term it shall become necessary or desirable for the accommodation or development of the business of the said demised railroads and premises to construct or acquire any branch or extension thereof, or to make any addition thereto or any improvement or betterment thereof or change therein, or to purchase any rolling stock for use in connection therewith, the lessor covenants that the lessee shall have full power and authority at his own expense to construct or acquire such branch or extension, or make such addition, improvement, betterment, or change, or to purchase such rolling stock, and that, in case the lessee shall so request in writing, it (the lessor) will construct or acquire such branch or extension, or make such addition, improvement, betterment, or change, or purchase such rolling stock: Provided, that the cost thereof shall be paid or furnished by the lessee, and for all moneys expended, paid, or furnished by the lessee for the construction or acquisition of any such branch or extension, or for making any such addition, improvement, betterment, or change, or for the purchase of any such rolling stock, the lessor shall execute and deliver to the lessee its bonds or obligations of such form and tenor as shall be approved by the lessee for the repayment of all such moneys, with interest at the rate of 5 per cent. per annum, payable semiannually, and upon the request of the lessee shall execute, to secure such bonds or obligations, a mortgage or deed of trust, in such form as the lessee may approve and as shall be authorized by law, covering all the railroads, property, and franchises then owned or thereafter to be acquired by the lessor, including any and all such branches, extensions, additions, improvements, and rolling stock; and all branches, extensions, additions, improvements, and rolling stock so constructed or purchased shall become part of the premises demised hereunder, and the lessee during the continuance of the term hereunder shall pay, satisfy, or discharge the interest on the bonds or obligations issued by the lessor as aforesaid in respect thereof: And provided, further, that the cost of the construction or acquisition of any such branch or extension, to the extent of one thousand dollars per mile, may be repaid to the lessee by the lessor by the issuance and delivery to the lessee of a like amount at par of the capital stock of the lessor."

Since the execution of the lease, and pursuant to its terms, the properties mentioned in the lease have been in possession of the lessee, which has operated the railroads therein described under the terms of the lease. The lessor has continuously maintained its corporate organization since the date of the execution of the lease, keeps an office, and maintains an office force, and retains the corporate powers conferred upon it by its charter; and during the year ending December 31, 1912, and during each year that the lease has been in effect, collected rentals from the lessee, invested the same for the

benefit of its stockholders, and distributed among them profits accruing from such investments. During the year 1912 each of the plaintiffs made specified improvements and betterments to its railroad. Two of them paid for such betterments or improvements out of the moneys derived by them from sales of specified rolling stock and equipment made by them to the lessee; and in payment of the betterments and improvements made by two of the lessors the lessee issued to them, respectively, its obligations in writing, called "certificates of indebtedness," made in favor of the lessor and bearing interest at the rate of 6 per cent. per annum. Except as above stated, neither of the plaintiffs engaged in any activities during the year 1912.

It is settled by controlling decisions that what each of the plaintiffs did in 1912 in the way of maintaining its corporate organization, and of receiving rentals and other income and making distribution thereof among its stockholders, did not constitute the "carrying on or doing business" by it in such wise as to make it subject to the tax imposed by the act of 1909. Act August 5, 1909, c. 6, § 38 (U. S. Compiled Statutes 1913, § 6300); Zonne v. Minneapolis Syndicate, 220 U. S. 187, 31 Sup. Ct. 361, 55 L. Ed. 428; McCoach v. Minehill Railway Co., 228 U. S. 295, 33 Sup. Ct. 419, 57 L. Ed. 842. A difference between the facts of the case last cited and those .in the pending cases is that, in the former, not only the operation of the leased railroad property was exclusively by the lessee, but it also did all that was done in the way of maintaining or improving that property, while in the latter the operation of the leased property was exclusively by the lessee, but the lessors, pursuant to terms of the leases, made improvements and betterments to their respective leased properties. Is the difference such a one as to make the rulings cited inapplicable?

The charter of each of the plaintiffs conferred upon its incorporators and their successors the usual powers of corporate existence, of acquiring and maintaining property necessary or appropriate for the business authorized to be engaged in, and of transacting and carrying on specified business. It is the exercise by the corporation of the last-named power that subjects it to liability to pay the tax in question. If it lawfully foregoes the exercise of that power, its exercise of other powers does not subject it to the tax. Zonne v. Minneapolis Syndicate, 220 U. S. 187, 31 Sup. Ct. 361, 55 L. Ed. 428; Flint v. Stone Tracy Co., 220 U. S. 107, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312. An effect of the lease was a total authorized cessation of the exercise by the lessor of the power of using its railway properties acquired or to be acquired during the term of the lease in the conduct of the only business for use in which those properties were acquired or are adapted. The acquisition, maintaining, and leasing of property or properties may be parts of a business which the corporate owner engages in. On the other hand, the acquisition and maintenance of property may be only means of enabling the owner to carry on a business for use in which the property is intended, and the leasing of the property may effect a transfer to the lessee of the conduct of that business, leaving the owner no longer engaged in or carrying on business.

Where the law permits, a corporation, like a natural person, may own, maintain, and be the lessor of property, after it has turned over to another the exclusive use of that property and the carrying on of the only business for use in which its property was acquired and is adapted. In the one case, what is done amounts to "the carrying on or doing business," within the meaning of the statute. In the other case, the activities of the owner are limited to those of the proprietorship of property which another exclusively uses in carrying on business. In a sense it is true that all that a business corporation may do is business, as it was created and exists for exclusively business purposes. But that it may be exempt from the tax in question, without being altogether dormant or inert, is shown by rulings above cited. It may act as a proprietor of property without engaging in a business contemplated by its charter. We think this happens when, as a result of an authorized lease, it forgoes for the space of a tax year the transaction of the business for use in which all its property was acquired, and the lessee corporation, by an exclusive use of that property in carrying on that business within that year, subjects itself to liability for the excise tax imposed upon such an exercise of corporate power. Unless a corporation is "engaged in business," it is not embraced in the description found in the statute. The quoted expression is one in common use. It has the same meaning, whether applied to a corporation or to a natural person. It is not apt or appropriate to describe one who has retired from business in which he had engaged and confines his activities to maintaining property let to another and used exclusively by the lessee in carrying on that business.

Each of the plaintiffs in the pending cases, in maintaining its railroad property at the instance of its lessee and as required by the lease, in a condition suitable for use in the railroad business, in which it does not engage, did not, any more than did the Minehill Company, as disclosed in the case above cited, extend its activities beyond those of a corporate proprietor not engaged in or carrying on or doing business within the meaning of the statute. It may as truly be said in these cases, as was similarly said in the opinion in the case of McCoach v. Minehill Railway Co., supra, that the lessee alone in 1912 was "doing business" as a railroad company upon the lines covered by the lease, and was taxable because of it. "The Corporation Tax Law does not contemplate double taxation in respect of the same business." The result of exacting the payment of the tax by the plaintiffs in error would be to hold them to liability, not because they were engaged in or carrying on business, but because of their ownership and maintenance of leased property used in carrying on business only by another corporation, which thereby subjected itself to liability for the tax.

The conclusion is that, as regards the disputed question of liability, the facts in these cases are not materially different from those of the case last mentioned. This conclusion finds support in rulings made in the following cases also: Lewellyn v. Pittsburgh B. & L. E. R. Co., 222 Fed. 177, 137 C. C. A. 617; New York Central & H. R. R. Co. v. Gill, 219 Fed. 184, 134 C. C. A. 558; Anderson v. Morris & E. R. Co., 216 Fed. 83, 132 C. C. A. 327; Forty-Two Broadway Co. v. Anderson (D. C.) 209 Fed. 991; Anderson v. Forty-Two Broadway Co., 213 Fed.

*777*, 130 C. C. A. 338. It follows that the judgment under review must be reversed. As the cases were submitted on agreed facts, there is no obstacle in the way of this court directing final judgment.

The judgment of the District Court is reversed, and the cases are remanded to that court, with direction to enter judgment in favor of each of the lessor plaintiffs for the amount of the tax paid by it, with interest; the costs to be taxed against the defendant in error.

---
⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes