### ATTORNEY GENERAL *vs.* BOSTON AND ALBANY RAILROAD COMPANY.

Suffolk.    March 5, 1919. — September 10, 1919.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Corporation,* Taxation.    *Railroad.    Boston and Albany Railroad Company.*
*Words,* "Business."

The Boston and Albany Railroad Company, which leased its entire property to the New York Central and Hudson River Railroad Company (now the New York Central Railroad Company) with the approval of the Commonwealth as given by St. 1900, c. 468, is not a corporation "doing business for profit" under St. 1918, c. 255, § 1, and accordingly is not subject to the tax imposed by that statute, although during the existence of the lease it has exercised the power of eminent domain and has issued bonds for the purpose of making improvements on its road.

INFORMATION, filed in the Supreme Judicial Court on December 3, 1918, by the Attorney General at the relation of the Treasurer and Receiver General against the Boston and Albany Railroad Company, alleged to be a corporation doing business for profit, to collect the additional tax imposed upon the net income of domestic corporations by St. 1918, c. 255.

The case came on to be heard before *De Courcy*, J., who at the request of the parties reserved it upon the pleadings and the agreed facts for determination by the full court.

*W. H. Hitchcock*, Assistant Attorney General, for the plaintiff.

*G. H. Fernald, Jr.*, for the defendant.

RUGG, C. J.   This is an information brought by the Attorney General at the relation of the Treasurer and Receiver General under St. 1903, c. 437, § 78, to collect taxes assessed under St. 1918, c. 255, § 1, whereby a tax is imposed upon "Every corporation incorporated under the laws of this Commonwealth and doing business for profit." The only question is, whether the defendant during the period here material was "doing business for profit" as these words are used in the statute. The material facts are that the defendant was organized as a corporation under St. 1867, c. 270, by the consolidation of the Boston and Worcester and the Western Railroad corporations. It was empowered to maintain and operate a railroad from Boston through Worcester and Springfield and across the Connecticut River to the western boundary of the Commonwealth. The defendant operated its railroad until 1900, when it leased its entire property to the New York Central and Hudson River Railroad Company, now the New York Central Railroad Company, for the term of ninety-nine years. The consent of the Commonwealth to this lease was given by St. 1900, c. 468. The defendant maintains its corporate existence and organization, holds annually a meeting of its stockholders and meetings of directors from time to time as may be necessary. The lessee furnishes it with an office for the conduct of its affairs, including meetings of its directors. It receives from the lessee the stipulated payments of rent and $10,000 annually for the maintenance of its corporate organization, pays interest on its indebtedness, the rentals of lines of railroad leased to it, the salaries of its officers, the expenses of maintaining its organization, and dividends upon its stock. It derived in 1917 an income of over $3,400 from certain securities owned by it and a few hundred dollars from interest on deposits. The lessee, as empowered by the lease, from time to time has filed petitions in the name of the defendant for leave to take land by right of eminent domain under the statute. Authority having been granted, the directors of the defendant as required by the lease have signed locations for the exercise of

eminent domain, which have been filed as required by law by the lessee. The initiative in all such matters in accordance with the lease is taken by the lessee. The power of eminent domain has been exercised thus three times in 1917 and five times in 1918. Once in 1917, at the request of the lessee and as provided in the lease, the defendant petitioned the public service commission for authority to issue bonds to the amount of $1,000,000 for the purpose of making improvements on the road. Authority was granted and the defendant issued the bonds, the interest on which will be paid by the lessee as a part of the rent. The moneys received from the bonds were paid to the lessee for improvements made by it on the railroad, all as required by the lease.

It was said in *Goddard* v. *Chaffee,* 2 Allen, 395, that "'Business' is a word of large signification, and denotes the employment or occupation in which a person is engaged to procure a living." *Allen* v. *Commonwealth,* 188 Mass. 59. "Business" has been said to be "that which occupies the time, attention and labor of men for the purpose of a livelihood or profit." *Flint* v. *Stone Tracy Co.* 220 U. S. 107, 171. The meaning of a "corporation . . . organized for profit and . . . engaged in business," as those words are used in the corporation tax law of the United States of 1909, 36 U. S. Sts. at Large, 112, 117, has been before the federal courts frequently. The words of that act are similar to those in the statute here under consideration. They both occur in enactments establishing taxation. They presumably have a like significance. The decisions of the United States Supreme Court are instructive in this connection. In *Cedar Street Co.* v. *Park Realty Co.* 220 U. S. 107, the company was organized generally to develop, sell, lease and deal in real estate and personal property. Its business was confined to the management and leasing of a single hotel; but this was held to be doing business. In *Zonne* v. *Minneapolis Syndicate,* 220 U. S. 187, a corporation owning a parcel of real estate leased for one hundred and thirty years, whose only activity was to receive and distribute the rent from time to time among its stockholders, was said practically to have gone out of business and hence not to be subject to the tax. In *McCoach* v. *Minehill & Schuylkill Haven Railroad,* 228 U. S. 295, a railroad corporation had been leased for nine hundred and ninety-nine years to another corporation upon terms in their general features similar to the terms of the lease by

the defendant. The operation of the railroad was turned over to the lessee. The activities of the lessor were the maintenance of its corporate existence, the holding of annual meetings by stockholders, the election of a board of managers, a secretary and treasurer, the receipt of rental, interest on deposits and the maintenance of a contingent fund from which an annual income of about $24,000 was received, payment of salaries of its officers and clerks, office rents and other expenses of maintaining its corporate existence. It was held, against a strong dissent by three justices, that the corporation, having leased all its property to another and doing only what was necessary to receive and distribute its income among its stockholders, was not doing business within the meaning of the act. The question whether the exercise of eminent domain would constitute doing business was left undecided. In *United States* v. *Emery, Bird, Thayer Realty Co.* 237 U. S. 28, the only business done by a real estate corporation was to keep up its corporate organization and to collect and distribute the rent received from its single lessee. This was held not to be doing business. In *Von Baumbach* v. *Sargent Land Co.* 242 U. S. 503, the previous decisions were reviewed and the test derived from a consideration of all of them was said at page 516 to be "between a corporation which has reduced its activities to the owning and holding of property and the distribution of its avails and doing only the acts necessary to continue that status, and one which is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain and such activities as are essential to those purposes." To the same effect respecting a similar statute is *People* v. *Sohmer*, 217 N. Y. 443. See *West End Street Railway* v. *Malley*, 158 C. C. A. 581; 246 Fed. Rep. 625. While those decisions of the Supreme Court of the United States are not binding upon this court and do not cover exactly the point here presented, they relate to the construction of a statute so closely analogous to that involved in the case at bar, both in its phraseology and purpose, as to be strongly persuasive touching its meaning.

A franchise to be a corporation was granted to the defendant for the purpose of building and operating a railroad for the accommodation of the public. That was the dominant aim of its organization. It could not, merely of its own volition, sell, mortgage or lease its property or franchise in such way as to deprive

itself of the power of accomplishing the ends for which it was created. *Attorney General* v. *Haverhill Gas Light Co.* 215 Mass. 394. *Richardson* v. *Sibley,* 11 Allen, 65. *Middlesex Railroad* v. *Boston & Chelsea Railroad,* 115 Mass. 347. *Davis* v. *Old Colony Railroad,* 131 Mass. 258, 271. Leasing of its entire property was not one of these ends. The approval of the Commonwealth was a prerequisite to the validity of the lease of the defendant. That lease so approved stripped the defendant of power to operate its railroad `and to perform most of the public services which justified its corporate existence. "The question is rather what the corporation is doing than what it could do." *United States* v. *Emery, Bird, Thayer Realty Co.* 237 U. S. 28, 32. Manifestly the defendant is not now doing the main business for which it was organized. All its powers as a railroad are not abrogated and annulled by the lease and the statute. It still holds railroad properties under lease to itself, remains bound by the terms of such leases and pays the stipulated rentals. It still possesses power to issue bonds and to take property by eminent domain. It exercises that power. Although I am not free from doubt on this point, the court are of opinion that these limited corporate functions remaining to it, which it still exercises, are not a doing of business for profit. The seizure or purchase of property at the request of the lessee in accordance with the obligation impressed on the lessor by the terms of the lease and the approving statute are necessarily for the benefit of the lessee. Whatever profit there may be accrues wholly to the lessee. Improvement of the railroad property by taking land for increased trackage, the building of freight houses and stations, was for the advantage of the lessee. These acts do not redound in any particular to the profit of the lessor. They do not enable it to receive any additional gain or advantage beyond the rental reserved in the lease. Even as to these powers to exercise eminent domain and to issue bonds, it has no right of initiative. It can act in these matters only at the instance of the lessee. Its conduct is but an automatic reflection of determinations conceived, instituted and carried into final effect by the lessee. The exercise of these attributes by the lessor is the act of a naked repository of corporate power, dormant so far as any possibility of profit to itself is concerned.

Under our law a corporation cannot be organized merely for letting a railroad. When a corporation established for the operation of a railroad is permitted by the sovereign power to retire utterly from that business, to become wholly inactive respecting it, and to be simply the quiescent recipient of a fixed income from a single permanent investment, it is difficult to say with due regard to the meaning of words that such a corporation is conducting business for profit. Its charter has not been changed. The corporation is not authorized to embark in a new business. The lease, however, approved by the Commonwealth, is a surrender during that term of its ordinary powers as a railroad corporation and a transfer of its business activities to the lessee. That which it continues to do is not business for profit according to common understanding. It makes no further efforts in the pursuit of gain, because the Commonwealth has approved the suspension of all its profit making attributes and functions in return for a fixed revenue, all the expenses of the collection and distribution of which are borne by the lessee. It exercises none of the distinctive functions of a railroad corporation. Its corporate energy is reduced below the point of conducting business for profit.

This conclusion is in harmony with several decisions of Circuit Courts of Appeal. In *Anderson* v. *Morris & Essex Railroad,* 132 C. C. A. 327; 216 Fed. Rep. 83, it was held that the issuance of bonds by the lessor corporation in accordance with the requirements of the lease, in addition to maintenance of corporate organization and receipt of rentals, did not constitute a doing of business under the act of Congress. In *New York Central & Hudson River Railroad* v. *Gill,* 134 C. C. A. 558; 219 Fed. Rep. 184, and in *Lewellyn* v. *Pittsburgh, Bessemer & Lake Erie Railroad,* 137 C. C. A. 617; 222 Fed. Rep. 177, the exercise of eminent domain, in *Traction Companies* v. *Collectors of Internal Revenue,* 139 C. C. A. 360; 223 Fed. Rep. 984, the issuance of stock and bonds and joining in conveyances of property, and in *Jasper & Eastern Railway* v. *Walker,* 151 C. C. A. 469; 238 Fed. Rep. 533, the expenditure of certain moneys in improvements, in each case in addition to the usual acts of a lessor corporation in maintaining its organization and collecting and distributing rent, were held not to be a doing of business.

There is nothing at variance with this result in *Copper Range*

*Co.* v. *Commonwealth,* 218 Mass. 558. The salient facts of that case were that a business corporation was organized for the express purpose of holding the stocks and securities of other corporations. That was its business. Manifestly the doing of the precise thing for which a business corporation is chartered is doing business. The income of a corporation not doing business for profit is not within the scope of the present statute, even though such corporation may fall within the general classification of business corporations.

*Information dismissed with costs.*