## CHILE COPPER CO. v. EDWARDS, Collector of Internal Revenue.

(District Court, S. D. New York. November 14, 1923.)

1. **Internal revenue ⬤9—Test whether corporation is "doing business" is what it does.**

   The test whether a corporation is "doing business" is what it does, and not what it can do under its charter.

2. **Internal revenue ⬤9—Corporation organized to finance another corporation held not doing business; "business."**

   A corporation, which was organized to and did receive and distribute dividends of and finance another corporation engaged in mining and selling copper, *held* not "doing business," though it invested its funds in call loans; "business" meaning some profitable activity undertaken on its own account.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Business; Doing Business.]

At Law. Action by the Chile Copper Company against William H. Edwards, Collector of Internal Revenue, Second New York District.

---

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

On motion to dismiss. Motion denied, and judgment rendered for plaintiff.

The complaint alleges the following facts:

This is an action to recover back taxes alleged by plaintiff to have been erroneously and illegally assessed against the plaintiff, and paid by it under protest, and arising under Revenue Act 1916, tit. 4, §§ 407–409 (39 Stat. 756, 789). Plaintiff is a Delaware corporation, with a capital stock outstanding of 3,800,000 shares, of the par value of $25 per share. The Chile Exploration Company is a New Jersey corporation, with a capital stock outstanding of 10,000 shares, of the par value of $100 a share. Its principal business is and has been the mining of copper from property in the republic of Chile, owned by it since its incorporation. It could not at any time have developed its mining property without borrowing large sums of money and in order to borrow such sums of money it would be necessary to sell to investors bonds or other obligations secured by a mortgage on its property. The laws of the republic of Chile provide that mining property in Chile cannot be sold for debt, so as to vest title thereto in creditors. Therefore the Chile Exploration Company could not at any time effectively mortgage its mining property in Chile, so as to secure an issue of bonds or other obligations, and an issue of bonds or other obligations of the Chile Exploration Company, unsecured by a mortgage on its mining property in Chile, would not have been salable in investment markets.

The plaintiff was organized for the purpose of providing a means whereby money could be borrowed from investors in sums sufficiently large to develop the mining property of the Chile Exploration Company. It was impracticable for the Chile Exploration Company to borrow such money directly from investors, because of the provisions of the laws of the republic of Chile previously referred to. Satisfactory security for such loans could be provided, however, by a pledge as collateral security of the capital stock of the Chile Exploration Company. The plaintiff was accordingly organized for the principal purpose of holding the capital stock of the Chile Exploration Company and pledging such capital stock as security for bond issues, the proceeds of which should be used to furnish the necessary capital to develop the mining property of the Chile Exploration Company. The plaintiff has continued to own all of the issued and outstanding capital stock of the Chile Exploration Company, and has continued to borrow money from investors and to finance the Chile Exploration Company in general.

The Chile Exploration Company duly paid the tax assessed against it, pursuant to the provisions of Revenue Act of 1916, tit. 4, § 407. Plaintiff's activities and methods of obtaining funds to enable the Chile Exploration Company to operate were alleged in detail, and the demand was for the return of the taxes paid by plaintiff, together with costs and disbursements of this action.

Thomas J. Crawford, Asst. U. S. Atty., of New York City, and F. D. Siefkin, Sp. Atty., Bureau of Internal Revenue, for the motion.

Arthur A. Ballantine and George E. Cleary, both of New York City, opposed.

LEARNED HAND, District Judge. [1] It is quite true that this plaintiff has been doing all that it was organized to do, and that this feature constantly runs through the cases, as if it were in some sense a test of whether it was "doing business" at all. Yet I cannot think that this would be a sound rule, or that it makes any difference whether the chartered powers are fully employed or not, because, as Mr. Justice Holmes said in U. S. v. Emery-Bird-Thayer Realty Co., 237 U. S. 28, 35 Sup. Ct. 499, 59 L. Ed. 825, the question is what it does, and not what it can do. There would be no justification in treating two

corporations differently, who did exactly the same things, merely because one had an extensive charter and the other did not.

[2] Had this been a lease, I think there could be no doubt. The different incidents of the plaintiff's activity have all been passed on. Thus receiving and distributing dividends is not enough to bring the lessor within the statute. Zonne v. Minneapolis Syndicate, 220 U. S. 187, 31 Sup. Ct. 361, 55 L. Ed. 428; McCoach v. Minehill Ry., 228 U. S. 295, 33 Sup. Ct. 419, 57 L. Ed. 842; U. S. v. Nipissing Mines Co. (C. C. A. 2) 206 Fed. 431, 124 C. C. A. 313; West End Ry. v. Malley (C. C. A. 1) 246 Fed. 625, 158 C. C. A. 581. Nor is the result different if the lessor, in addition, issues bonds direct to the lessee for his use in paying for improvements upon the leased lands. Anderson v. Morris & Essex R. R. (C. C. A. 2) 216 Fed. 83, 132 C. C. A. 327; N. Y. Central v. Gill (C. C. A. 1) 219 Fed. 184, 134 C. C. A. 558; Traction Cos. v. Collectors (C. C. A. 6) 223 Fed. 984, 139 C. C. A. 360; Public Service Co. v. Herold (C. C. A. 3) 229 Fed. 902, 144 C. C. A. 184. In one of the cases comprised within Public Service Co. v. Herold, supra, it was held that when the lessor, instead of delivering bonds to the lessee, to be sold, sold the bonds himself and paid the money to the lessee, the result was the same. The following cases present variants upon the general situation, in each of which the lessor was held not to be "doing business"; Condemning lands for the lessee, N. Y. Central v. Gill, supra; selling parts of the leased property, Traction Cos. v. Collectors, supra; selling the whole property, Miller v. Snake River Valley R. R., 223 Fed. 946, 139 C. C. A. 426; providing for the issue of new bonds to refund others canceled, Public Service Co. v. Herold, supra; maintaining a sinking fund and extending an indebtedness, McCoach v. Continental, etc., Co., 233 Fed. 976, 147 C. C. A. 650; acquiring new property for the lessee and improving it to answer to the lease, Jasper, etc., Co. v. Walker (C. C. A. 5) 238 Fed. 533, 151 C. C. A. 469 (certainly an extreme case); investing the lessor's surplus funds in investments more profitable than bank deposits, McCoach v. Minehill Ry. Co., 228 U. S. 295, 33 Sup. Ct. 419, 57 L. Ed. 842.

These cases bear out my statement made above that, had the plaintiff leased its property to the Exploration Company and thereafter done what it did, it would not have been liable to the tax. It seems to me to make no difference that it was organized to do the same things. The term "business" means some profitable activity undertaken on its own account. There was such a business, but it was the mining and sale of copper, to which both corporations were necessary, owing to the state of the Chilean law. Of course, it is true that each was doing a part of that business, because financing was a necessary incident to its prosecution. But the excise does not exact a double tax for leave to do a single business, and the plaintiff was in substance no more than the personification of a part of the enterprise. Except for the separation of the corporate activities, no one would suggest that the Exploration Company was doing two businesses. As things are, the nearest approach to a separate business is the plaintiff's investment of its funds in call loans. That, however, falls quite within the rule in McCoach v. Minehill Ry. Co. supra.

The defendant argues that Van Baumbach v. Sargent Land Co., 242 U. S. 503, 37 Sup. Ct. 201, 61 L. Ed. 460, changed the earlier rule and made obsolete the decisions in the lower courts which have depended upon it. I cannot so understand that decision. The lessor by no means confined itself to activities incidental to the exploitation of the lease, and it was to those added doings that it owed its liability to the tax. It is true that among these was the employment of a supervising engineer (a company), and that this is one of the activities relied upon. While this was a natural incident to the protection of the lessor's interests, yet it was no necessary part of the exploitation of the lease. However that may be, the lessor did much more than that. It explored the soil on its own account, sold land, made stumpage contracts, and leased lots in a village and to squatters. In short, it appears to have managed the surface for its profit. All this was altogether independent of the business of the lessee.

Chemung Iron Co. v. Lynch (C. C. A. 8) 269 Fed. 368, was a similar case, though the lessor merely hired a supervising engineer and explored the soil. In Boston Terminal Co. v. Gill (C. C. A. 1) 246 Fed. 664, 158 C. C. A. 620, the plaintiff conducted a number of profitable ventures in its railway station, quite separate from its formal maintenance of that station for the benefit of the five roads which built it. I see no ground in these cases to suppose that the earlier decisions are no longer controlling, and for the reasons already given I think that the motion to dismiss must be denied.

That being so, it is my understanding that the plaintiff is to take judgment for the amount demanded, with interest; and it is so ordered.